**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**AMY D. HILTNER,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0502** (BOR Appeal No. 2055781)
                          (Claim No. 2015032969)

**LOWE'S HOME CENTERS, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Amy D. Hiltner, by Counsel James D. McQueen, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Lowe's Home Centers, Inc., by Counsel Steven K. Wellman, filed a timely response.

The issue on appeal is the amount of Ms. Hiltner's permanent partial disability in the claim. The claims administrator granted a 41% permanent partial disability award on March 28, 2018. On September 21, 2020, the Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's decision and granted Ms. Hiltner a 46% permanent partial disability award. This appeal arises from the Board of Review's Order dated May 20, 2021, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a *de novo* standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Ms. Hiltner sustained a compensable injury during the course of her employment on June 5, 2015. According to her Report of Injury form, she slipped on plastic banding on the floor and fell on her hand. She was found to have fractured her left wrist as a result of the fall. Ms. Hiltner experienced swelling and pain at the left wrist with contractures of the left wrist and left hand. She also complained of pain in her right shoulder, and that she was limited with relation to self-care activities. It has been determined by several medical professionals that Ms. Hiltner has reached maximum medical improvement, and several physicians have offered opinions regarding the degree of whole person impairment for the compensable components in the claim.

Ms. Hiltner underwent an Independent Medical Evaluation conducted by Christopher Martin, M.D., on March 5, 2018. Dr. Martin found marked objective abnormalities in the left wrist, most notably flexion contractures of multiple joints of the fingers and left wrist. There was also markedly reduced range of motion in many other joints and atrophy of the muscles of the left hand. Although Dr. Martin stated that she lacked many of the classic features of complex regional pain syndrome, he noted that she reported subjective symptoms beyond the left wrist. Referring to the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993), Dr. Martin found 40% upper extremity impairment. He found 4% upper extremity impairment for the left thumb, 21% impairment for the left index finger, 21% impairment for the left middle finger, 21% for the left ring finger, and 8% upper extremity impairment for the left little finger. Combining the upper extremity impairments resulted in an overall upper extremity impairment of 69%. Dr. Martin referred to Table 3 and converted the final amount to 41% whole person impairment. He stated that the amount of impairment is applicable whether or not Ms. Hiltner has complex regional pain syndrome. By Order of the claims administrator dated March 28, 2018, Ms. Hiltner was granted a 41% permanent partial disability award.

Ms. Hiltner protested the claims administrator's decision and received an Independent Medical Evaluation by Bruce Guberman, M.D. In his report dated April 12, 2018, Dr. Guberman concluded that she reached maximum medical improvement with a history of sprain of the right

wrist occurring at work on June 5, 2015; history of fracture of the left radial styloid process on June 5, 2015; and complex regional pain syndrome of the upper left hand and wrist, as well as the right thumb, index, and middle fingers and both shoulders. Dr. Guberman assigned 13% upper extremity impairment for Ms. Hiltner's hand. Addressing the left index finger, he found 17% impairment. Dr. Guberman found 18% impairment for the left middle finger, 9% impairment for the left ring finger, and 9% impairment for the left little finger. The total amount of impairment for the hand was 66%, which converted to 59% upper extremity impairment. Referring to Table 3, Dr. Guberman adjusted the impairment to 48% whole person impairment. He believed that that the complex regional pain syndrome was spreading and involved not only the left hand and wrist, but also the left shoulder, right shoulder, and right hand. Dr. Guberman opined that if Ms. Hiltner's shoulders were also considered compensable due to complex regional pain syndrome, then 50% impairment of the left arm should be combined with 11% impairment for the right arm, for a total of 56% whole person impairment.

On August 27, 2018, Zaid Al-Qudah, M.D., completed a Diagnosis Update and requested that the diagnoses of complex regional pain syndrome, spasticity, and right shoulder pain be included as compensable components of the claim. The claims administrator accepted the diagnosis of complex regional pain syndrome as a compensable component in an Order dated August 28, 2018. The claims administrator commented that Dr. Al-Qudah's handwriting was illegible for the second diagnosis and took no action upon the request. In addressing Ms. Hiltner's right shoulder pain, the claims administrator rejected the diagnosis for being too general as a diagnosis. The record reflects no protest of the claims administrator's Order.

Ms. Hiltner received an Independent Medical Evaluation by Prasadarao Mukkamala, M.D., on October 15, 2018. Dr. Mukkamala performed a physical examination and reviewed her clinical history and determined that she had reached maximum medical improvement. He also noted that she complained of right shoulder pain. Dr. Mukkamala described the left hand as being in claw hand deformity. He diagnosed Ms. Hiltner as suffering from a fracture of the left distal radius, resulting in a suboptimal outcome in the form of contracture of the left wrist and left hand. He estimated whole person impairment at 42%, based upon the abnormalities he observed in the left wrist and left hand. Dr. Mukkamala stated that the limitations of the range of motion at the right shoulder and left shoulder were not causally related to the compensable injury. Nonetheless, Dr. Mukkamala concluded that if the Office of Judges were to consider the left shoulder as a compensable component of the claim, he would amend his rating to 44% whole person impairment.

Ms. Hiltner received a fully favorable decision from the Social Security Administration awarding her disability benefits. It was found that she had several severe impairments, including complex regional pain syndrome with contractures of loss of functional use of her left hand and arm and progression to the left shoulder, bilateral carpal tunnel syndrome, and migraine headaches. The onset of disability was established to be September 1, 2015.

An Independent Medical Evaluation report prepared by D. Kelly Agnew, M.D., dated January 9, 2019, noted that diffuse tenderness was found at Ms. Hiltner's left shoulder during physical examination. Dr. Agnew stated that range of motion studies of her shoulders yielded

3

questionable results. Addressing her right upper extremity, Dr. Agnew noted no right wrist tenderness, but she did have diffuse tenderness at the left wrist. Ms. Hiltner had excellent and full range of motion of the right wrist, but her left wrist lacked 35 degrees of neutral by way of extension. She was capable of 60 degrees flexion with 5 degrees radial deviation and 10 degrees ulnar deviation. In examining her left thumb, Dr. Agnew found tenderness without swelling or discoloration. Decreased levels of extension were found in her index finger, middle finger, and ring finger. Dr. Agnew diagnosed nondisplaced left distal radius fracture and right wrist bone contusion. He saw no evidence of a right shoulder injury and commented that Ms. Hiltner's injury to her left upper extremity exhibited a very poor outcome with significant left upper extremity contractures, but no actual confirmation of reflex sympathetic dystrophy or complex regional pain syndrome. Referring the AMA *Guides*, Dr. Agnew assigned 63% upper extremity impairment for the left hand with 34% upper extremity impairment for the left wrist. Dr. Agnew stated that if the left shoulder were included in the calculation, Ms. Hiltner would have 14% impairment of the upper extremity relative to the shoulder. The combined 79% upper extremity impairment was converted based upon Table 3 to yield 47% whole person impairment and 46% excluding the left shoulder.

In a Final Decision dated September 21, 2020, the Office of Judges concluded that a preponderance of the credible medical evidence demonstrates that Ms. Hiltner has 46% permanent partial disability impairment based upon the opinion of Dr. Agnew. The Office of Judges noted that the disagreement regarding the degree of whole person impairment for the compensable components in the claim is not especially great. As an orthopedic surgeon, Dr. Agnew was found to be the most qualified of the medical examiners to make a determination of whole person impairment in the claim. Although Ms. Hiltner was seeking an award based upon Dr. Guberman's recommendation, the Office of Judges found that the whole person rating of Dr. Guberman is not supported by the other reports of record. Accordingly, the Office of Judges reversed the March 28, 2018, Order of the claims administrator and granted Ms. Hiltner a 46% permanent partial disability award. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 20, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The impairment ratings recommended by the physicians of record are similar. However, Dr. Agnew's examination was the most recent, and it is a better representation of Ms. Hiltner's true permanent impairment.

Affirmed.

**ISSUED: October 18, 2022**

**CONCURRED IN BY:**
Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn