## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**Franklin Coleman,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0741** (BOR Appeal No. 2054520)
                        (Claim No. 2018001948)

**Spartan Mining Company,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Franklin Coleman, by Counsel J. Robert Weaver, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Spartan Mining Company, by Counsel Sean Harter, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on December 18, 2017. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its July 29, 2019, Order. The Order was affirmed by the Board of Review on August 24, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

> (d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue

1

in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Coleman, a fire boss, alleges that he developed carpal tunnel syndrome in the course of and resulting from his employment. On May 22, 2014, Mr. Coleman was seen by his treating physician, Raymond Bishop, M.D., for follow up for his type II diabetes. Mr. Coleman's blood sugars were high. It was noted that he had hyperlipidemia and was going to undergo surgery for a right forearm nodule. On October 29, 2015, Mr. Coleman underwent an EMG/nerve conduction study which showed mild bilateral carpal tunnel syndrome.

Devesh Sharma, M.D., performed left carpal tunnel release surgery on June 17, 2016. On August 18, 2016, he noted that Mr. Coleman's left wrist had improved post-surgery and was feeling better with physical therapy. However, he had developed numbness in his right fingers. Dr. Sharma diagnosed bilateral carpal tunnel syndrome and primary osteoarthritis of an unspecified hand.

On October 18, 2016, Mr. Coleman was seen by Scott Farner, M.D., due to pain in his left wrist surgical site, palm, the middle of his wrist, and his forearm. It was noted that Mr. Coleman likely had some cervical radiculopathy. Bilateral wrist injections and a possible carpal tunnel revision surgery were recommended. Mr. Coleman underwent a cervical x-ray that day which showed moderate spondylosis, worst at C5-6. Dr. Farner noted that Mr. Coleman had longstanding carpal and cubital tunnel symptoms which were likely exacerbated by work.

Mr. Coleman was seen by Brian Daniels, D.O., on October 28, 2016, for results from a cervical MRI. The results showed a C5-6 bone spur indenting the thecal sac with mild stenosis and moderate left foraminal stenosis. Similar findings were noted at C6-7. Dr. Daniels diagnosed chronic neck pain and cervical radiculopathy. He opined that Mr. Coleman's cervical issues were likely causing his hand symptoms, especially given the location of the stenosis.

Jeffrey Stanley, PT, completed an initial evaluation of Mr. Coleman on October 31, 2016, in which he determined that physical therapy was appropriate treatment for Mr. Coleman's cervical pain and possible radiculopathy. The prognosis was fair because Mr. Coleman's symptoms were chronic. On November 3, 2016, Dr. Sharma treated Mr. Coleman for bilateral hand pain, which was constant. It was noted that Mr. Coleman's persistent numbness in his fingers may be the result of diabetic neuropathy because he also experienced a burning sensation in his feet.

Mr. Coleman returned to Dr. Daniels on December 2, 2016, and reported persistent cervical spasms and loss of range of motion. Physical therapy was not helping. He stated that he was unable to return to work due to upper extremity weakness, lower extremity weakness, pain, and radiculopathy. On December 13, 2016, Dr. Farner treated Mr. Coleman and stated that he had no improvement post carpal tunnel surgery and diagnosed cervical radiculopathy. It was noted that Mr. Coleman had diabetes and suffered from neuropathy in his feet. The diagnoses were recurrent left carpal tunnel syndrome, left cubital tunnel syndrome, cervical radiculopathy, and diabetic neuropathy. Surgery was scheduled for left carpal and cubital tunnel releases.

Mr. Coleman completed the Employees' and Physicians' Report of Injury on July 10, 2017. He stated that he stopped working on June 16, 2016, due to progression of his carpal tunnel syndrome symptoms. Dr. Daniels completed the physician's section and diagnosed occupational bilateral carpal tunnel syndrome. Dr. Daniels completed a carpal tunnel report on August 9, 2017, in which he stated that Mr. Coleman had symptoms in both hands which worsened with repetitive motion. He noted that Mr. Coleman had osteoarthritis and diabetes.

Marsha Bailey, M.D., performed an Independent Medical Evaluation on November 21, 2017, in which she diagnosed bilateral upper extremity peripheral neuropathies including bilateral carpal and cubital tunnel syndromes. She opined that the conditions were not the result of Mr. Coleman's work duties but rather, the result of his strong personal risk factors in the form of poorly controlled diabetes, obesity, osteoarthritis, and cervical spine disease. Dr. Bailey stated that Mr. Coleman's duties as a fire boss involved some use of hand tools, hammers, and shovels, but did not put him at occupational risk for carpal tunnel syndrome. She noted that his poorly controlled diabetes resulted in bilateral upper extremity peripheral neuropathies as well as diabetic peripheral neuropathies in both feet.

On December 12, 2017, Mr. Coleman returned to Dr. Farner and reported that he had postponed his left carpal tunnel revision surgery because he lost his insurance. The claims administrator rejected the claim on December 18, 2017. Dr. Farner performed left carpal tunnel release surgery on December 29, 2017. It was noted that there was a lot of scarring. Mr. Coleman followed up with Dr. Farner on January 11, 2018, and reported significant improvement in his symptoms.

Prasadarao Mukkamala, M.D., performed a Record Review on July 10, 2018, in which he opined that Mr. Coleman's carpal tunnel syndrome was not the result of his work activities. Dr. Mukkamala reviewed Mr. Coleman's job duties and stated that they were not the kind of activities known to cause an increased risk of carpal tunnel syndrome. He noted that Mr. Coleman had several risk factors for carpal tunnel syndrome in the form of diabetes, obesity, degenerative cervical spondyloarthropathy, and osteoarthritis. Dr. Mukkamala stated that he agreed with Dr. Bailey's opinion that Mr. Coleman's carpal tunnel syndrome was not the result of his work duties.

Mr. Coleman testified in a July 18, 2018, deposition that he began working in West Virginia as a fire boss in 2010. He asserted that he spent 90% of his day shoveling and did his fire boss duties for the last hour and a half of the day. Mr. Coleman asserted that when he started

3

working in West Virginia, he was having no hand, wrist, elbow, or arm issues. He was hired by Spartan Mining Company in 2015. That year, he developed problems with his hands and sought treatment from Dr. Daniels. Mr. Coleman underwent three surgeries on his wrists, two on the left and one on the right. None of the surgeries were successful. Mr. Coleman stated that he stopped working in June of 2016 and was terminated in December of 2016. He did not file his claim until after his surgeries and after he was terminated. He denied any problems with his hands or wrists prior to 2015 but admitted that he was diagnosed with diabetic neuropathy in both feet.

Syam Stoll, M.D., performed an Independent Medical Evaluation on December 11, 2018, in which he diagnosed bilateral carpal tunnel syndrome. He opined that the condition was the result of Mr. Coleman's type II diabetes and not his occupational duties. He also noted that Mr. Coleman had a pre-claim occupational exposure to activities that can cause carpal tunnel syndrome during his thirty years working as a butcher. Dr. Stoll stated that Mr. Coleman's work activities for Spartan Mining Company did not put him at increased risk of carpal tunnel syndrome. He noted that he has not been employed as a coal miner since June of 2016, yet his symptoms have not changed or improved. Further, Mr. Coleman's pain drawing was not consistent with carpal tunnel syndrome but was consistent with multiple peripheral nerve issues, including peripheral neuropathy.

The Office of Judges affirmed the claims administrator's rejection of the claim in its July 29, 2019, Order. After reviewing the evidence, the Office of Judges determined that Mr. Coleman was diagnosed with diabetes as early as May 22, 2014. In his report of that date, Dr. Bishop stated that Mr. Coleman's blood sugar was high and had not been checked in quite a while. According to Drs. Bailey, Mukkamala, and Stoll, Mr. Coleman's diabetes is a nonoccupational risk factor for carpal tunnel syndrome that elevated his risk of developing the condition. Further, all three physicians noted that Mr. Coleman suffers from diabetic neuropathy in his feet and cervical spondyloarthropathy, and all three opined that his carpal tunnel syndrome was not the result of his work duties for Spartan Mining Company. The Office of Judges found the reports of Drs. Bailey, Mukkamala, and Stoll to be reliable. Mr. Coleman has multiple risk factors for carpal tunnel syndrome, none of which were his occupational duties. The Board of Review affirmed the Office of Judges' Order on August 24, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). The record clearly shows that Mr. Coleman has multiple personal risk factors for carpal tunnel syndrome in the form of diabetes, obesity, degenerative cervical spondyloarthropathy, and osteoarthritis. Further, his work duties were determined by three different physicians to not be the kind of activities that cause an increased risk of carpal tunnel syndrome.

Affirmed.

**ISSUED: May 2, 2023**


**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn