736 S.E.2d 80

Roy JUSTICE, Petitioner

v.

WEST VIRGINIA OFFICE INSURANCE COMMISSION and Lowe's Home Centers, Inc., Respondent.

No. 11–0113.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 16, 2012.

Decided Nov. 14, 2012.

Otis R. Mann, Jr., Law Office of Otis R. Mann, Jr., Charleston, WV, for Petitioner.

H. Toney Stroud, Steptoe and Johnson, PLLC, Charleston, WV, for Respondent, Lowe's Home Centers, Inc.

McHUGH, Justice:

Petitioner Roy Justice appeals from the December 22, 2010, order of the West Virginia Workers' Compensation Board of Review ("Board of Review") through which Petitioner's permanent total disability ("PTD") award previously granted on December 7, 1994, was suspended and vacated. Mr. Justice challenges the Board of Review's determination, upon a reopening of his PTD claim, that he is capable of gainful employment. Mr. Justice argues that his former employer, Respondent Lowe's Home Centers, Inc., ("Lowe's"), violated the statute which authorizes the claim reopening. Citing language in West Virginia Code § 23–4–16(d)(2) (2010), which directs that a claimant's former employer "shall not be a party to the reevaluation," Petitioner argues that Lowe's involvement in the reevaluation process renders the order vacating his PTD award invalid and requires the reinstatement of the prior PTD award. After having carefully considered the statutory language at issue in conjunction with the statutory scheme, we conclude that the Board of Review did not commit error in vacating Petitioner's PTD award.

## I. Factual and Procedural Background

During the process of loading a riding lawnmower with the assistance of three or four co-workers, Mr. Justice was injured while working at Lowe's on February 22, 1990. While initially diagnosed with lumbar strain, an MRI revealed herniated discs associated with degenerative changes. As a result of his compensable injury, Petitioner was granted a 5% permanent partial disability ("PPD") award. Maintaining that he was unable to return to work, Mr. Justice filed a claim seeking a PTD award. By order en-

tered on December 7, 1994, Petitioner was granted a PTD award with an onset date of February 22, 1990. While the issue of Petitioner's entitlement to PTD was litigated,[1] the award was upheld under the now discarded liberality rule.[2]

In February 2006, the PTD claim was reopened by Lowe's for the purpose of considering whether Petitioner continued to be eligible for PTD benefits.[3] *See* W.Va.Code § 23-4-16(d); 85 C.S.R. § 5-5. Lowe's, through its claims administrator, Specialty Risk Services, referred Petitioner to various examiners who reached a conclusion that Mr. Justice could perform a sedentary level of work. By letter dated August 16, 2007, Mr. Justice was advised that he had 120 days in which to submit evidence to support the continuation of his PTD benefits.

Petitioner submitted the report of Gloria Alderson, a PTD rehabilitation specialist, dated November 20, 2007. According to her report, Mr. Justice remained totally and permanently disabled. Mr. Justice submitted a second vocational report, dated August 21, 2009, that was prepared by Elizabeth Davis. In addition to noting that Petitioner was limited to performing sedentary physical tasks,[4] Ms. Davis observed that one of "several barriers to competitive employment" was Mr. Justice's "view of himself as totally disabled."

By order dated December 16, 2007, Petitioner's PTD award was vacated and his benefits were immediately suspended by the claims administrator. In explanation of the decision, the order indicated that the report Petitioner submitted from Ms. Alderson was deemed unreliable based on her failure to consider the results of the functional capacity evaluation. That evaluation, performed by physical therapist Brenda Marcum on November 14, 2006, demonstrated full upper extremity range of motion and strength and the capability of lifting 13–23 pounds as well as the ability to perform both sedentary work and some light physical demand level of work.[5] Additional evidence for the decision was Dr. Paul Bachwitt's examination on January 13, 2006, which led him to conclude that the initial injury should have taken four months at most to heal. A second orthopedic evaluation performed by Dr. Prasadarao Mukkamala resulted in the opinion that Petitioner had reached maximum medical improvement and that home exercise was the only further treatment required. Dr. Mukkamala recommended a whole person impairment of 5% and found there was no further indication of either Lortab or intramuscular injections.

A psychiatric examination performed by Dr. Charles Weise on June 21, 2006, indicated a 5% Dysthmic Disorder resulting in a 5% impairment.[6] Two separate vocational rehabilitation assessments were performed, the first of which on March 2, 2006, by Sean Snyder. It was Mr. Snyder's conclusion that Mr. Justice was employable and that he would benefit from vocational rehabilitation services.[7] On May 1, 2007, Lori Hudak per-

---

1. Mr. Justice was only 43 at the time of his PTD award; he was 39 at the time of the injury.

2. *See Posey v. State Workmen's Comp. Comm'r,* 157 W.Va. 285, 201 S.E.2d 102 (1973); *cf.* W.Va.Code § 23-4-1g(b) (2010) (stating that "claim for compensation ... must be decided on its merit and not according to any principle that requires statutes governing workers' compensation to be liberally construed because they are remedial in nature").

3. While the record does not specify the basis for Lowe's decision to reopen this claim, Dr. Bachwitt performed a second independent medical examination ("IME") on January 13, 2006. As a result of that IME, Dr. Bachwitt determined that the lumbar strain experienced by Petitioner should have resolved within four months at most and that Mr. Justice was capable of sedentary to light work.

4. In making her evaluation of Petitioner, Ms. Davis referred to a functional capacity evaluation that Mr. Justice underwent on November 14, 2006. The report of Ms. Alderson did not acknowledge that functional capacity evaluation.

5. Mr. Justice's specific work tolerances could not be evaluated however as he declined to participate in the work simulation activities portion of the testing.

6. Dr. Weise indicated uncertainty as to whether the impairment was related to Petitioner's work-related injury.

7. Mr. Snyder further observed that Petitioner has a lack of desire to return to the workforce.

formed a vocational rehabilitation assessment and found that Petitioner has the skills necessary to transition into the workforce but she acknowledged that his lack of desire to return to work might pose an impediment. An occupational medicine specialist, Dr. Marsha Bailey, concluded after her examination of Mr. Justice on July 31, 2008, that there were no real signs of true radiculopathy. Stating that his perception of his disability far outweighed his actual impairment, Dr. Bailey concluded that Mr. Justice could return to work at the sedentary work level.

Petitioner protested the decision of the claims administrator and a hearing was held on March 25, 2010, before the Office of Judges. In its corrected decision of May 3, 2010, the Office of Judges upheld the ruling of the claims administrator. By order dated December 22, 2010, the Board of Review affirmed the ruling of the Office of Judges. Petitioner seeks relief from that ruling through this appeal.

## II. Standard of Review

As we previously recognized in *Dodson v. Workers' Compensation Division*, 210 W.Va. 636, 558 S.E.2d 635 (2001), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Workers' Compensation Appeal Board. *Id.* at 641, 558 S.E.2d at 640. With the cessation of the Workers' Compensation Commission ("Commission"), the appeals to this judicial body are now taken from the Board of Review. *See* W.Va.Code § 23–5–15 (2010). As we recognized in *Fenton Art Glass Co. v. West Virginia Office of Insurance Commissioner*, 222 W.Va. 420, 664 S.E.2d 761 (2008), this Court may only reverse or modify the Board of Review, where the Board's decision is an affirmation of prior rulings reached by both the Office of Judges and the original factfinder, "if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record." *Id.* at 427, 664 S.E.2d

at 768 (quoting W.Va.Code § 23–5–15(c)). With these standards in mind, we proceed to determine whether the Board of Review committed error in affirming the decision of the Office of Judges.

## III. Discussion

The parties concur that West Virginia Code § 23–4–16 establishes continuing authority over PTD awards. As the Legislature made clear, whether it is the Commission, the successor to the Commission, a private carrier, or a self-insured employer— the applicable entity "has continuing power and jurisdiction over claims in which permanent total disability awards have been made after the eighth day of April, one thousand nine hundred ninety-three." W.Va.Code 23–4–16(d). Because Petitioner's PTD award was made on December 7, 1993, there is no question as to the applicability of this statutory provision. *See id.*

Pursuant to this continuing authority, any of the four statutorily-identified entities "shall continuously monitor permanent total disability awards and may, from time to time, after due notice to the claimant, reopen a claim for reevaluation of the continuing nature of the disability and possible modification of the award." W.Va.Code § 23–4–16(d)(1). In compliance with this authority, Respondent Lowe's reopened Mr. Justice's PTD claim. And as a result of that reopening and the reevaluation that occurred, Petitioner was determined to no longer be permanently and totally disabled.

Seeking to set aside the decision which vacated his PTD award, Petitioner looks to the statutory language which provides: "The claimant's former employer shall not be a party to the reevaluation, but shall be notified of the reevaluation and may submit any information as the employer may elect." W.Va.Code § 23–4–16(d)(2). Advocating a strict interpretation of this language, Mr. Justice argues that Lowe's involvement in the reopening and the reevaluation process[8] constituted a violation of the statute and thus requires us to conclude that the Board of Review's order is invalid.

8. As proof of the improper involvement of Lowe's, Mr. Justice cites to the claims administrator's notation in its order of December 16, 2007, that "the employer ascertained your current physical, psychological and vocational status through multiple evaluations."

When Petitioner raised this argument during the hearing before the Office of Judges, the administrative law judge ("ALJ") reasoned as follows:

> There appears to be an inconsistency with portions of the workers' compensation statutes, including W.Va.Code § 23–4–16(d)(2) which is replete with the phrase "the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable ..." To say that a self-insured employer may undertake reopening a permanent total disability award under this section but "shall not be a party" to the process would be to produce an absurd result.

Seeking to avoid an absurd result, the ALJ decided to read into the statute the proscription of a former employer's physical *presence* during any examinations conducted as part of the reevaluation. In addition, the ALJ looked to the fact that a third-party claims administrator rather than Lowe's itself was handling the reevaluation process. Under this reasoning, the ALJ concluded that "the self-insured employer has complied with the letter and spirit of W.Va.Code § 23–4–16(d)."

■ As the ALJ recognized, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938); *accord State v. Kerns*, 183 W.Va. 130, 394 S.E.2d 532 (1990). We agree with the ALJ that to disallow a self-insured employer from entitlement to invoke the provisions of West Virginia Code § 23–4–16(d) would not only be illogical but would nullify significant portions of the statute. While the inclusion of the proscription against former employers from being a party to the reevaluation process made arguable sense when the Commission was the entity who both assessed the requests to reopen PTD claims and then had responsibility for issuing rulings in conjunction with the reevaluation, the continued inclusion of this language in the statute is problematic. To initially authorize a self-insured employer to reopen a PTD claim but then in the next subsection to direct that this self-insured former employer cannot be a party to the reevaluation is paradoxical. As the Office of Judges recognized, to enforce the statutory proscription under discussion works an absurd result in the instance of self-insured employers who seek to reopen a PTD claim. *See* W.Va.Code § 23–4–16(d). This is further evidenced by the fact that with the elimination of the Commission, a self-insured employer or its agent necessarily must be involved in the reevaluation of PTD awards under the statutory scheme. *See id.*

■ Under the language of West Virginia Code § 23–4–16(d) (2010), which permits a self-insured employer to reopen a permanent total disability claim for the purpose of reevaluating the continuing nature of the disability, the inclusion of language directing that a claimant's former employer "shall not be a party to the reevaluation" appears to be the result of legislative oversight. *See* W.Va. Code § 23–4–16 (1995). Consequently, we hold that notwithstanding statutory language that suggests otherwise, an order issued by the West Virginia Workers' Compensation Board of Review which modifies or vacates a previous award of permanent total disability is not subject to challenge based on the involvement of a self-insured former employer in the reevaluation process given that the participation of the self-insured former employer is clearly anticipated and authorized by the provisions of West Virginia Code § 23–4–16(d). To rule otherwise would create an absurd result and would completely nullify the remaining provisions of the statute as they relate to the authority of self-insured employers to seek reevaluations of PTD claims.[9] *See id.*

Based on the foregoing the decision of the Office of Judges is affirmed.

Affirmed.

---

9. Due to the enactment of a statutory provision that contains an inherent inconsistency, this Court has been forced to interpret the language at issue in a manner that both makes sense and also prevents the remaining provisions of the statute from being rendered meaningless. If the Legislature disagrees with our interpretation, it can amend the statutory language that we were required to interpret through this opinion.