# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**West Virginia Office of the Insurance Commissioner,**
**Commissioner Below, Petitioner**

**and**

**RNG Service, Co.**
**Employer Below, Petitioner**

**vs.)**    **No. 21-0811** (BOR Appeal No. 2057070)
          (Claim No. 900054070)

**Jeffrey J. Johns,**
**Claimant Below, Respondent**


# MEMORANDUM DECISION


Petitioner West Virginia Office of the Insurance Commissioner ("WVOIC"), in its capacity as administrator of The Old Fund, and RNG Service Company, appeal the order of the West Virginia Workers' Compensation Board of Review ("Board of Review") dated September 22, 2021. The Board of Review reversed and vacated the June 16, 2021, decision of the Workers' Compensation Office of Judges ("Office of Judges") affirming the claims administrator's order of November 28, 2018, denying Respondent Jeffrey J. John's request for left knee arthroscopic surgery.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's order is appropriate. *See* W. Va. R. App. P. 21.

Mr. Johns sustained a compensable injury on April 9, 1990, when he was working on a gas line which exploded. He was knocked unconscious and transported to Ruby Memorial Hospital with injuries to his left leg and a laceration to his liver. The claim was held compensable for closed femur shaft fracture. Due to the severity of his injury, Mr. Johns underwent a left reduction of the left knee dislocation with open reduction internal fixation of medial malleolus and placement of a distal lock intramedullary rod in the left femur. On March 2, 1991, he had a reconstruction of his anterior cruciate ligament. Mr. Johns was able to return to work as an auto parts salesman in 1993 before becoming a maintenance worker for the Department of Highways in 1996.

---

[1]WVOIC is represented by Melissa M. Stickler. A response was not filed on behalf of Mr. Johns.

The record indicates that Mr. Johns has undergone extensive therapy for his left leg and wore a left knee brace for several years. In 2000, Mr. Johns started seeing Lucas Pavlovich, M.D., because of persistent symptoms such as pain and swelling in his left knee. He was initially treated with medication and steroid injections for his pain. However, he eventually underwent chondroplasty and a partial lateral meniscectomy in October of 2003.

On July 1, 2004, Joseph Grady, M.D., performed an independent medical evaluation of Mr. Johns's compensable injury. Dr. Grady noted that he continued to have problems with his left knee following the initial surgery, and he later underwent left knee chondroplasty and a partial lateral meniscectomy in October 2003. Mr. Johns was informed that he probably needed surgery for an injury to his posterior cruciate ligament, but he opted not to pursue surgery. Based upon his physical examination and a review of the available medical records, Dr. Grady found Mr. Johns to be at maximum medical improvement with a total of 18% whole person impairment for his compensable injuries.

In a clinical encounter summary dated July 15, 2014, Dr. Pavlovich noted that Mr. Johns reported to his office with a new injury to his right knee. Mr. Johns stated that he twisted his right knee stepping out of a grader on July 8, 2014, and he experienced popping and burning sensations along the medial aspect of his right knee at the time of the injury. He later developed difficulty bearing weight and medial discomfort. Dr. Pavlovich's assessment was right knee internal derangement with possible medial meniscus tear versus articular cartilage injury. An MRI of the right knee was recommended.

On June 8, 2018, Mr. Johns returned to Dr. Pavlovich and reported a sudden onset of left knee pain and effusion. The symptoms occurred unexpectedly and were not related to a specific event or activity. Mr. Johns reported that he was doing well until the recent onset of pain and swelling. He was unable to work due to his left knee symptoms and using crutches to walk. Dr. Pavlovich examined Mr. Johns and observed severe guarding of the left knee and tenderness to light touch. There was large effusion over the left knee compared to the right knee. Dr. Pavlovich's assessment was left knee internal derangement and effusion. He was treated with left knee aspiration and injections.

Mr. Johns followed-up with Dr. Pavlovich on June 19, 2018, reporting an onset of sharp pain, effusion, and mechanical catching in his left knee. Dr. Pavlovich noted that, "(h)e states that a week and a half ago he twisted his knee and felt immediate sharp pain and developed a large effusion." Mr. Johns had just completed a course of Supartz and started to see some relief with his injections. However, once he irritated his knee, he experienced swelling. Mr. Johns had the effusion aspirated, and he received a cortisone injection. Because Mr. Johns had sharp pain on the medial side of his knee, Dr. Pavlovich believed he may have a medial meniscus tear and wished to proceed with a diagnostic arthroscopy. In a protestable Order dated November 28, 2018, the claims administrator denied Dr. Pavlovich's request for left knee arthroscopy. The claims administrator stated that the reason for the denial was, "[I]t appears to be a new injury; this is not compensable to the 04/09/1990 work injury." Mr. Johns protested the claims administrator's decision.

2

In a letter dated December 15, 2018, Dr. Pavlovich notified the claims administrator that he was requesting knee arthroscopy for determining whether Mr. Johns had a medial meniscal tear. Dr. Pavlovich stated:

> "He has had a previous knee reconstruction and has had instability as a result of his ligamentous injury. He reinjured his knee and aggravated his condition. As a result of his aggravation of his previous condition from 1990, I request that he proceed with a diagnostic arthroscopy."

Additional medical records from Dr. Pavlovich dated February 13, 2019, noted that Mr. Johns denied any new injuries, but indicated that his left knee pain and swelling had increased. Physical examination revealed left knee range of motion to 130 degrees and hypersensitivity over the peroneal nerve and the medial and lateral joint line. Dr. Pavlovich's assessment was left knee internal derangement with likely chondral and meniscal pathology. It was opined that Mr. Johns's left knee problems were causally related to his initial workers' compensation injury of April 9, 1990, in the form of a progressive deterioration of the knee. Dr. Pavlovich stated that Mr. Johns would benefit from either diagnostic arthroscopy or another round of cortisone and hyaluronic acid injections. Because Mr. Johns had recently received cortisone injections, Dr. Pavlovich recommended left knee arthroscopy as it appeared that the results of the injections had plateaued.

In a final decision dated June 16, 2021, the Office of Judges affirmed the claims administrator's November 28, 2018, decision and held that the weight of the evidence does not establish that the request for left knee arthroscopy is medically necessary and reasonably related to Mr. Johns's compensable left knee injury of April 9, 1990. The Office of Judges concluded that the record indicates that Dr. Pavlovich's request for left knee arthroscopy was precipitated by a sudden onset of left knee symptoms following a new injury in 2018. As such, the Office of Judges found that Mr. Johns failed to show that the request for left knee arthroscopy is reasonably related to the compensable injury of April 9, 1990.

On September 22, 2021, the Board of Review reversed and vacated the final decision of the Office of Judges dated June 16, 2021. The Board of Review found the analysis and conclusions of the Office of Judges to be clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. Specifically, the Board of Review found that Dr. Pavlovich opined that Mr. Johns's knee condition is related to his initial injury as a progressive deterioration of the knee. After noting Mr. Johns's multiple injuries to his left knee in a gas line explosion on April 9, 1990, the Board of Review stated:

> Lucas Pavlovich, M.D., has treated the claimant's left knee for many years. On June 8, 2018, Dr. Pavlovich reported that yesterday the claimant's left knee started to have a large effusion and a severe amount of pain. Dr. Pavlovich aspirated the knee and gave the claimant an injection. On June 19, 2018, Dr. Pavlovich reported that the claimant stated he twisted his knee a week and half ago. On December 15, 2018, Dr. Pavlovich said the claimant had a previous knee reconstruction and has had instability as a result of his ligamentous injury. Dr. Pavlovich said he requested a diagnostic arthroscopy as a result of the claimant's aggravation of his previous

condition from 1990. On February 13, 2019 (in the electronic claim file under date of June 8, 2018), Dr. Pavlovich indicated that the claimant has had numerous surgeries related to his Workers' Compensation claim, he had had no new injury, and his pain and swelling have recently worsened. Dr. Pavlovich opined that the knee condition is related to the claimant's initial Workers' Compensation claim and this is progressive deterioration of the knee. He recommended a knee arthroscopy.

The Board of Review concluded that the claims administrator has authorized Mr. Johns to have at least six surgeries involving the left knee, and the only medical evidence in the record relating to the need for an arthroscopic surgery is from Dr. Pavlovich. Finally, the Board of Review concluded that Dr. Pavlovich's reports establish that left knee arthroscopic surgery is medically necessary and reasonably required in the course of treatment for Mr. Johns's compensable injury.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision effectively represents a reversal of a prior ruling of either the Workers' Compensation Commission or the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. *See* W. Va. Code § 23-5-15(c) & (e). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. of Ins. Comm'r*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we agree with the findings and conclusions of the Board of Review. Although the Office of Judges determined that Mr. Johns was found to be at his maximum degree of medical improvement for the compensable injury in 2004, Dr. Pavlovich requested diagnostic knee arthroscopy due to an aggravation of his previous condition. Dr. Pavlovich stated in his December 15, 2018, letter, that Mr. Johns has had previous knee reconstruction and has had instability as a result of his ligamentous injury. Dr. Pavlovich then concluded that Mr. Johns reinjured his knee and aggravated his condition. As such, Mr. Johns has established that the request for left knee arthroscopic surgery is medically necessary and reasonably required to treat his compensable injury, as required by West Virginia Code § 23-4-3 and West Virginia Code of State Rules § 85-20.

Affirmed.

**ISSUED: June 13, 2023**

**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn