# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Alliance Coal, LLC,**
**Employer Below, Petitioner**

**vs.)    No. 21-1021** (BOR Appeal No. 2056953)
(Claim No. 2019014167)

**William Chuck,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Alliance Coal, LLC, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). William Chuck filed a timely response.[1] The issue on appeal is permanent partial disability. The claims administrator granted a 2% award on January 2, 2020. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its June 11, 2021, Order and instead granted an 8% permanent partial disability award. The Order was affirmed by the Board of Review on November 18, 2021. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

Mr. Chuck, an underground coal miner, injured his right shoulder on December 29, 2018, while hanging high-line cable. The claim was held compensable for right shoulder sprain on January 31, 2019. There were three independent medical evaluations performed to determine the amount of whole person impairment Mr. Chuck sustained as a result of the compensable injury.

On December 12, 2019, Chuanfang Jin, M.D., performed an independent medical evaluation in which she noted that Mr. Chuck underwent surgery on July 18, 2019, for the work-related injury, after a delay due to a non-work-related-condition. Dr. Jin diagnosed right shoulder rotator cuff tear, post-surgery, and preexisting degenerative arthrosis of the right shoulder. She opined that some of the tears seen in the shoulder were likely degenerative and stated that Mr. Chuck's injury was likely a trigger of his symptoms rather than a cause. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*"), Dr. Jin assessed 4% right shoulder impairment from Figures 38, 41, and 44. The uninjured left shoulder showed 1% impairment, so Dr. Jin apportioned 1% for preexisting conditions. The 3% left shoulder impairment converted to 2% whole person impairment.

---

[1]Petitioner, Alliance Coal, LLC, is represented by James W. Heslep, and respondent, William Chuck, is represented by James T. Carey.

1

Bruce Guberman, M.D., performed an independent medical evaluation on June 11, 2020, in which he diagnosed chronic right shoulder post-traumatic strain with a large rotator cuff tear and acromioclavicular joint and degenerative joint disease. From Figures 38, 41, and 44 of the AMA *Guides*, Dr. Guberman found 6% upper extremity impairment. He found 10% upper extremity impairment from Table 27, for a total of 15% right upper extremity impairment. Dr. Guberman examined Mr. Chuck's uninjured right shoulder and found 1% impairment, so he apportioned 1% for Mr. Chuck's preexisting degenerative changes. Dr. Guberman converted the 14% right upper extremity impairment to 8% whole person impairment and opined that Mr. Chuck previously received a 2% permanent partial disability award, so he was entitled to an additional 6% award.

Dr. Guberman reviewed Dr. Jin's evaluation and noted that their findings were similar except for his finding of 10% right upper extremity impairment for Mr. Chuck's resection arthroplasty of the distal left clavicle. Dr. Guberman stated that he included the impairment because the resection is part of the Mumford procedure and was specifically noted in the operative report. He opined that Mr. Chuck would not have required the Mumford procedure if not for the compensable injury.

On March 22, 2021, Robert Waltrip, M.D., performed an independent medical evaluation in which he diagnosed a possible right shoulder sprain/strain, which had resolved. He opined that Mr. Chuck's rotator cuff tear was not the result of his work injury. He stated that acute, post-traumatic rotator cuff tears generally result in immediate treatment due to an inability to continue working and difficulty raising the arm. Mr. Chuck continued working and did not seek treatment for a month. Further, an MRI showed degenerative tendinopathy with a leading-edge rotator cuff tear, which were age appropriate degenerative changes. Dr. Waltrip stated that he agreed with Dr. Jin that the rotator cuff tear was likely degenerative rather than traumatic. Therefore, the right shoulder surgery was not related to the compensable injury. Dr. Waltrip also found that the acromioclavicular element of the surgery was not related to the compensable injury because the mechanism of injury would not have stressed the acromioclavicular joint. He therefore opined that the Mumford procedure, used to fix the acromioclavicular joint, was unrelated to the compensable injury. Dr. Waltrip assessed Mr. Chuck's impairment and found 3% upper extremity impairment. He apportioned 1% for impairment found in the uninjured left shoulder and found a total whole person impairment rating of 1%.

The Office of Judges reversed the claims administrator's grant of a 2% permanent partial disability award and instead granted an 8% award in its June 11, 2021, order. It found that the claim was held compensable for right shoulder sprain; however, Mr. Chuck also underwent right shoulder surgery, which was authorized in the claim. Therefore, the treatment was covered under the claim. The Office of Judges determined that Dr. Guberman's report was the most reliable of record and that he correctly included a rating for the distal clavicle resection. The Office of Judges noted that the rotator cuff repair and Mumford procedure were covered in the claim, though the conditions were not officially added to the claim. Dr. Guberman opined that Mr. Chuck would not have required the Mumford procedure and distal clavicle resection if not for the work-related injury. Therefore, an impairment rating for the surgery was proper. The Office of Judges agreed

with Dr. Guberman. The Office of Judges found Dr. Waltrip's report to be unreliable because he did not include impairment for the authorized surgery. The Office of Judges concluded that Mr. Chuck was entitled to an 8% permanent partial disability award. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the order on November 18, 2021.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision effectively represents a reversal of a prior order of either the Workers' Compensation Commission or the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. *See* W. Va. Code §§ 23-5-15(c) & (e). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The claim was held compensable for right shoulder sprain. However, right shoulder surgery was authorized to treat Mr. Chuck's compensable condition. As a result of that surgery, Mr. Chuck suffered some impairment, as noted by Dr. Guberman. Therefore, that impairment must be included in the assessment of Mr. Chuck's permanent partial disability resulting from the claim. The Board of Review, and by extension the Office of Judges, committed no error in finding that Mr. Chuck was entitled to an 8% permanent partial disability award based on Dr. Guberman's evaluation.

Affirmed.

**ISSUED: September 14, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

3