**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Blackhawk Mining, LLC,**
**Employer Below, Petitioner**

**vs.)    No. 22-0065   (**BOR Appeal No. 2057121)
                (Claim No. 2019020340)

**Richard Blankenship,**
**Claimant Below, Respondent**


**MEMORANDUM DECISION**


Petitioner Blackhawk Mining, LLC appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent Richard Blankenship filed a timely response.[1] The issue on appeal is permanent partial disability. Petitioner argues that the Board of Review erred in awarding the claimant permanent partial disability benefits for a noncompensable preexisting degenerative condition. The claims administrator granted respondent a 13% permanent partial disability award on January 21, 2020. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its July 21, 2021, order and granted respondent an 18% permanent partial disability award. The order was reversed by the Board of Review on December 22, 2021. The Board of Review granted respondent a 25% permanent partial disability award. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

On March 19, 2019, respondent, an electrician, hit his head on a low-hanging beam while working in a coal mine.  Respondent went to the emergency room where he was diagnosed with a cervical sprain with radiculopathy. Donald Lewis, M.D., interpreted a CT scan taken on March 9, 2019, as showing no acute fracture but a right paracentral disc protrusion at C5-C6. Respondent next saw his primary care providers who referred him to Rajesh V. Patel, M.D., an orthopedic spine surgeon. Dr. Patel interpreted x-ray views taken of respondent's cervical spine on April 15, 2019, as showing no fractures or dislocations. There was a good alignment and only minimal degenerative changes to the cervical spine. No instabilities were noted.

Dr. Patel treated respondent conservatively for several months. However, respondent's pain continued. Consequently, on September 17, 2019, respondent underwent an operation during which Dr. Patel performed an anterior cervical disc arthroplasty at C5-C6 and an anterior cervical

---

[1]Petitioner is represented by Jeffrey B. Brannon, and respondent is represented by Gregory S. Prudich.

discectomy and fusion at C6-C7 as a separate procedure. The surgery provided respondent with some relief, but the pain in his neck persisted.

Respondent was seen by Prasadarao Mukkamala, M.D., for an independent medical evaluation on January 16, 2020. Dr. Mukkamala found that respondent was at maximum medical improvement. Dr. Mukkamala assessed 7% impairment for loss of range of motion, 0% impairment due to a lack of remarkable neurological findings, and 11% impairment for the September 17, 2019, operation and the fact that respondent continued to have symptoms. When these impairments were combined, Dr. Mukkamala found that respondent had 17% impairment. However, Dr. Mukkamala also placed respondent in Category IV of the cervical impairment chart set forth as a part of West Virginia Code of State Rules § 85-20-1 (2004).[2] Therefore, Dr. Mukkamala adjusted his impairment rating from 17% to 25% impairment. Because Dr. Mukkamala found that respondent had degenerative spondyloarthropathy, Dr. Mukkamala opined that respondent's impairment should be apportioned between that preexisting condition and the March 19, 2019, compensable injury.[3] Dr. Mukkamala allocated 12% impairment to the degenerative spondyloarthropathy and 13% impairment to the compensable injury, but did not explain his reasoning behind those allocations. On January 21, 2020, the claims administrator granted a 13% permanent partial disability award.

At his deposition held on June 11, 2020, respondent testified that he had no history of injury or neck pain prior to the March 19, 2019, compensable injury. Respondent further stated that, before the compensable injury, he was able to perform his job fully and without limitation.

Respondent was seen by Bruce A. Guberman, M.D., for an independent medical evaluation on June 23, 2020. Dr. Guberman found that respondent was at maximum medical improvement. Dr. Guberman assessed 7% impairment for range of motion abnormalities and 11% impairment for respondent's operation. Like Dr. Mukkamala, Dr. Guberman opined that respondent's combined impairment rating was 17% but adjusted that rating to 25% impairment due to respondent's placement in Category IV of the cervical impairment chart. On the other hand, Dr. Guberman found that none of respondent's impairment was attributable to preexisting degenerative changes because (1) there was no evidence of cervical injuries or pain, range of motion abnormalities, or limitations on respondent's daily activities prior to the March 19, 2019, compensable injury; and (2) the presence of degenerative changes, in and of themselves, would not produce any impairment rating using either the range of motion model or the criteria for rating impairment due to cervical disorders found in West Virginia Code of State Rules § 85-20-1. Accordingly, Dr. Guberman allocated all of respondent's 25% impairment to the compensable injury.

---

[2]For cervical conditions placed in Category IV, the permissible impairment range is 25% to 28%.

[3]West Virginia Code § 23-4-9b provides that, unless there is a total permanent disability, a preexisting disease or injury shall not be taken into consideration in fixing the amount of compensation.

On September 2, 2020, Kenneth Fortgang, M.D., performed an Age of Injury Analysis of respondent's cervical spine. Dr. Fortgang found that a May 13, 2020, CT scan of the cervical spine showed a prosthetic disc at C5-C6 and an anterior cervical fusion at C6-C7. Dr. Fortgang opined that "[t]here are no specific abnormalities described otherwise and . . . no gross evidence that the surgery is recent" and that "[t]he findings are considered chronic."

Respondent was seen by David Soulsby, M.D., for an independent medical evaluation on October 14, 2020. Dr. Soulsby found that respondent was at maximum medical improvement. Respondent continued to have documented pain and loss of range of motion but did not have persistent signs of radiculopathy. Therefore, Dr. Soulsby found that respondent had 16% impairment. Like Drs. Mukkamala and Guberman, Dr. Soulsby also placed respondent in Category IV of the cervical impairment chart and adjusted the impairment rating to 25%. Dr. Soulsby disagreed with Dr. Guberman as to whether there should be apportionment of respondent's impairment. While not citing any specific medical text, Dr. Soulsby stated that medical literature and research contradicts Dr. Guberman's opinion that asymptomatic degenerative disc disease has no effect on a person's range of motion. Thus, Dr. Soulsby found that apportionment was appropriate in respondent's case. Dr. Soulsby did not explain his allocations of impairment between respondent's degenerative disc disease and the March 19, 2019, compensable injury except to state that the degenerative disc disease was only moderate and that respondent was a younger individual. Dr. Soulsby attributed 30% of the 25% impairment to the degenerative disc disease and 70% of the impairment to the compensable injury. Therefore, Dr. Soulsby opined that respondent has 18% impairment because of the March 19, 2019, work-related injury.[4]

In its April 20, 2021, order, the Office of Judges reversed the claims administrator's decision granting a 13% permanent partial disability award based upon Dr. Mukkamala's report and instead granted respondent an 18% permanent partial disability award due to Dr. Soulsby's report. The Office of Judges determined that Dr. Soulsby's report set forth the most reliable findings of respondent's impairment. The Office of Judges found that Dr. Mukkamala's decision to allocate almost half of respondent's 25% impairment to his preexisting spondyloarthropathy was arbitrary and capricious. The Office of Judges further found that Dr. Guberman failed to apportion out impairment attributable to the degenerative changes in the cervical spine as required by West Virginia Code § 23-4-9b.

On December 22, 2021, the Board of Review reversed the Office of Judges' order and granted respondent a 25% permanent partial disability award based upon the report of Dr. Guberman. Unlike the Office of Judges, the Board of Review found the reports of both Drs. Mukkamala and Soulsby unreliable as it determined that each physician made an arbitrary apportionment of respondent's impairment that was not supported by the record. The Board of Review further found that there was no evidence that respondent had impairment or experienced difficulty with his work or daily activities prior to the March 19, 2019, compensable injury. Therefore, the Board of Review concluded that there was no preexisting "definitely ascertainable"

---

[4]Dr. Soulsby found that 70% of 25% was 17.5% and then rounded up to produce the 18% impairment rating.

impairment to be apportioned out of the impairment rating pursuant to West Virginia Code § 23-4-9b.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision effectively represents a reversal of a prior ruling of either the Workers' Compensation Commission or the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. *See* W. Va. Code §§ 23-5-15(c) & (e). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. of Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we find no error in the reasoning and conclusions of the Board of Review. "The purpose of W. Va. Code § 23-4-9b (2003) is to disallow any consideration of any preexisting definitely ascertainable impairment in determining the percentage of permanent partial disability occasioned by a subsequent compensable injury[.]" Syl. Pt. 2, in part, *SWVA, Inc. v. Birch*, 237 W. Va. 393, 787 S.E.2d 664 (2016). The determination of a preexisting definitely ascertainable impairment essentially constitutes a finding that a claimant had a permanent partial disability in an amount certain prior to his compensable injury. While respondent's medical records reveal preexisting degenerative changes in his cervical spine, the evidence does not show that he was symptomatic and having to miss work prior to the March 19, 2019, compensable injury. Accordingly, the Board of Review properly found that there was no preexisting definitely ascertainable impairment to be apportioned out of the impairment rating pursuant to West Virginia Code § 23-4-9b. The findings and report of Dr. Guberman established a sufficient basis on which to grant respondent a 25% permanent partial disability award. *See* Syl. Pt. 2, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) ("Pursuant to W. Va. Code § 23-4-1g(a) (2003) (Repl. Vol. 2010), a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence."). Therefore, we conclude that the Board of Review did not err in reversing the Office of Judges' decision.

Affirmed.


**ISSUED: September 14, 2023**


**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn