**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Hughes Supply Company,**
**Employer Below, Petitioner**

**vs.)    No. 22-550**    (BOR Appeal No. 2057650)
(JCN: 2017000600)

**M.B.,**
**Claimant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Hughes Supply Company appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent M.B. filed a timely response.[1] The issue on appeal is M.B.'s entitlement to a permanent total disability award. The claims administrator denied the request for a permanent total disability award on December 9, 2019. The Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's order in its November 15, 2021, decision, and M.B. was granted a permanent total disability award with an onset date of February 1, 2019. The award granted by the Office of Judges was affirmed by the Board of Review on June 1, 2022. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

M.B. was injured on July 1, 2016, when he suffered an electric shock to multiple parts of his body while working as an electrician for the employer. Because he suffered electric shock throughout his body, the claimant needed surgery, including skin grafts. The claim was held compensable on January 6, 2017. Eventually, the claims administrator added the following as compensable conditions of the claims: (1) muscle weakness generalized; (2) third-degree burns to the unspecified hand and bilateral forearm; (3) second-degree burn to the head, face, and neck; (4) adhesive capsulitis of the right shoulder; (5) burns to 20-29% of the body surface with 0%-9% third-degree burns; and (6) second degree burns to the abdominal wall and the unspecified thigh.

---

[1]Hughes Supply Company is represented by Charity K. Lawrence, and M.B. is represented by Reginald D. Henry. We use initials to identify parties in certain cases involving sensitive information. *See* W. Va. R. App. Proc. 40(e).

On May 10, 2018, Bruce Guberman, M.D., evaluated M.B. and opined that, as a result of his injury, he could no longer play the guitar and would have difficulty picking up coins, writing, and buttoning clothing. Dr. Guberman opined that M.B. was permanently disabled from all types of employment, and recommended 76% whole person impairment, which did not include any psychiatric impairment. By order dated July 5, 2018, the claims administrator granted M.B. a 76% permanent partial disability award based on Dr. Guberman's report.

In a report dated June 8, 2018, Prasadarao B. Mukkamala, M.D., stated that he evaluated M.B. and determined that the claimant sustained severe burns from an electrocution at work. As a result of the injury, M.B. developed adhesive capsulitis of the right shoulder, and his wound care included skin grafting. He also received psychological counseling. Dr. Mukkamala found the claimant to be at maximum medical improvement and stated that it was unlikely that the claimant would be able to return to any type of work "with or without restrictions." Dr. Mukkamala assessed a total of 73% whole person impairment for the claim.

M.B. underwent psychological testing by Teresa D. Smith, Psy.D., on January 3, 2019, which showed a marked amount of emotional distress and anxiety. The testing also revealed depression, significant somatization, and that suicidal ideation may be present. Following the psychological testing, the employer submitted a forensic psychiatric independent medical evaluation report by Timothy L. Thistlethwaite, M.D., dated January 4, 2019. Dr. Thistlethwaite concluded that M.B. was at maximum medical improvement and suffered from symptoms consistent with mild to moderate impairment resulting in 10% psychiatric impairment. On January 22, 2019, the claims administrator granted M.B. a 10% permanent partial disability award based upon the report of Dr. Thistlethwaite.

After receiving an award for psychiatric impairment, the claimant submitted his application for permanent total disability benefits on February 21, 2019, listing 76% whole person impairment due to his occupational injuries, and 10% whole person impairment due to his psychiatric injuries. In the application, he stated that he worked as an electrician dating back to 1980. He indicated that the medical conditions that prevented him from working included venous insufficiency, shoulder joints, knees, hips, chronic nerve pain, inability to make a fist with either hand, inability to kneel, inability to climb, inability to lift, lack of stamina, and the inability to sit for long periods of time. M.B. stated that his wife was a licensed minister and in the past, he would support her by playing the guitar and singing. As a result of his injuries, M.B. stated that he could no longer play the guitar or use the tools that he used as an electrician. On March 28, 2019, an order was entered finding that M.B. met the minimum requirement for further consideration of his entitlement to a permanent total disability award because he had been granted at least 50% in permanent partial disability awards.

On April 16, 2019, M.B. underwent a Function Capacity Evaluation ("FCE") with Bobbie Jo Chapman, an Occupational Therapist and Certified Hand Therapist, at Charleston Physical Therapy Specialists. Ms. Chapman listed five discrepancies in the testing, including a finding of no bell curve with the grip testing, and that the respondent was "untestable" on sensory testing. Although there was evidence of self-limiting and stopping during the testing, the test results were that the M.B.'s scars from grafting and burns affected his function. He did not have a full range of

motion, sensation, and strength. Ms. Chapman's clinical impression was that the evaluation did not represent M.B.'s true functional capacity as it was believed that he exhibited insincere efforts based on the discrepancies observed during testing. Ms. Chapman determined that M.B. qualified for the light physical demand classification with no modifications needed for walking, sitting, standing, and lifting up to twenty pounds occasionally, in a safe environment. In an Addendum report dated May 1, 2019, Ms. Chapman addressed the surveillance video footage that was provided by the claims administrator showing M.B. resting his arms in elbow extension and wrist extension on the back of a pew while leaning against it. According to the video, M.B. was able to shake hands, pick up and manage fretting, and pluck the strings of a bass guitar for more than twenty minutes. He also used a microphone. The video further showed him using his hands, clapping, and reaching overhead. At one point, M.B. helped to catch a woman who was falling backward. The Addendum report noted that the behaviors observed in the video were inconsistent with what was observed during the evaluation.

After reviewing the surveillance video, Dr. Mukkamala submitted a supplemental report dated May 1, 2019, stating that he had recently received a letter, video footage, and an FCE report concerning M.B.. Dr. Mukkamala said that at the time of the original evaluation, he opined that it was unlikely that M.B. would be able to return to any type of work, with or without restrictions. However, after reviewing the surveillance video, Dr. Mukkamala was of the opinion that M.B. was capable of returning to work at a light physical demand level, and perhaps even at a medium physical demand level if his material handling was limited to no more than twenty pounds on a frequent basis and no more than thirty-five pounds on an occasional basis.

The petitioner submitted a PTD Independent Vocational Rehabilitation evaluation report from Casey Vass, with Vass Vocational Services, Inc., dated May 29, 2019. According to the report, M.B. indicated that he was unable to work due to his PTSD, which makes him irritable, as well as being in constant pain. M.B. reported to Mr. Vass that he could not make a fist and was unable to play his guitar more than a short duration of time. Mr. Vass found that M.B. would have the ability to manage a work force or work, including as an electrician, electrician supervisor, electrician inspector, or estimator. A labor market survey was conducted within a seventy five mile radius of the respondent's residence, but Mr. Vass reported that M.B. expressed no interest in vocational rehabilitation because he considers himself disabled from competitive employment. Because it was found that the M.B. may be able to work at the medium exertional level, Mr. Vass believed that M.B. could return to his job as an electrician with a different employer.

The Permanent Total Disability Reviewing Board ("PTDRB") issued an Initial Recommendation on August 26, 2019, finding that M.B. had 76% whole person impairment due to his occupational injuries and 10% whole person impairment due to his psychiatric injuries. It was found that he met the minimum requirements for further consideration of a permanent total disability award of either 50% impairment resulting from either a single occupational injury or disease, or a combination thereof, or 35% or greater statutory disability pursuant to the provisions of West Virginia Code § 23-4-6(f). M.B.'s application for a permanent total disability award was to be evaluated under West Virginia Code § 23-4-6(n)(2) to determine whether the disability rendered him unable to engage in a substantial gainful activity requiring skills or abilities that he had or which could be acquired.

The PTDRB determined that M.B. retained the ability to be employed in the current job market because the results of the FCE placed him in the light physical demand level. The PTDRB noted that the vocational evaluation by Casey Vass found that M.B. retained the functional ability to return to work, and a market survey identified appropriate job openings within his physical demand level. M.B. was not permanently and totally disabled due to his employment potential. The PTDRB issued its final recommendation on December 6, 2019, with a protestable order denying permanent total disability benefits on December 9, 2019.

In a hearing held before the Office of Judges on September 23, 2021, counsel for the claimant argued that M.B. was entitled to the rebuttable presumption of permanent total disability pursuant to West Virginia Code § 23-4-6(d).[2] It was M.B.'s position that the preponderance of the evidence established that he was unable to engage in substantial gainful activity requiring skills and the inability to acquire new skills. In response, counsel for the petitioner argued that M.B. failed to prove that the compensable injury prevented him from being able to return to gainful employment because the most recent vocational assessment concluded that there were jobs in the labor market that the claimant could perform.

In a final order dated November 15, 2021, the Office of Judges found that the claimant is entitled to the presumption of a permanent total disability award pursuant to West Virginia Code § 23-4-6(d) because he has an aggregate permanent disability of more than eighty-five percent disability. Although the petitioner was able to show that some of M.B.'s self-reported limitations are exaggerated, the Office of Judges found that the employer did not fully rebut the presumption of permanent total disability pursuant to West Virginia Code § 23-4-6(d). It was found that the addendum and supplemental reports by Ms. Chapman and Dr. Mukkamala overstated what the surveillance videos revealed because the videos did not prove that M.B. was capable of maintaining a job over a full eight-hour workday for five days per week. The Office of Judges also specifically stated that the vocational report submitted by Casey Vass was too vague in that it lacked identification of the types of jobs Mr. Vass identified as appropriate for the claimant. Based upon the evidence of record, the Office of Judges reversed the December 9, 2019, order of the claims administrator and granted M.B. a permanent total disability award with an onset date of February 1, 2019. In an order dated June 1, 2022, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the permanent total disability award.

---

[2]West Virginia Code § 23-4-6(d) provides, in pertinent part, as follows:

A single or aggregate permanent disability of eighty-five percent or more entitles the employee to a rebuttable presumption of a permanent total disability for the purpose of paragraph (2), subdivision (n) of this section: Provided, however, That the claimant must also be at least fifty percent medically impaired upon a whole body basis or has sustained a thirty-five percent statutory disability pursuant to the provisions of subdivision (f) of this section. The presumption may be rebutted if the evidence establishes that the claimant is not permanently and totally disabled pursuant to subdivision (n) of this section.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision effectively represents a reversal of a prior ruling of either the Workers' Compensation Commission or the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. *See* W. Va. Code § 23-5-15(c) & (e). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. of Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

M.B. is entitled to the presumption of a permanent total disability award pursuant to West Virginia Code § 23-4-6(d) because he has an aggregate permanent disability of more than 85% percent disability. On appeal, the employer argues that M.B. failed to carry his burden of proving that the compensable injury prevents him from working. However, the Office of Judges and Board of Review concluded that the preponderance of the evidence establishes that M.B. sustained permanent total disability as a result of his workplace injuries, and the employer did not rebut the presumption. Because the order of the Office of Judges, as affirmed by the Board of Review, was not clearly wrong based upon the evidentiary record, the Board of Review's order is affirmed.

Affirmed.

**ISSUED:**

**CONCURRED IN BY: February 20, 2024**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn