# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Jerrald Barker,**
**Claimant Below, Petitioner**

**v.)**      **No. 22-0078**      (BOR Appeal No. 2057260)
                                 (JCN: 2018021286)

**Rescare,**
**Employer Below, Respondent**


# MEMORANDUM DECISION


Petitioner Jerrald Barker appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent Rescare filed a timely response.[1] The issue on appeal is permanent partial disability. The claim administrator granted a 7% permanent partial disability award on September 11, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its August 20, 2021, order. The order was affirmed by the Board of Review on January 20, 2022. Upon our review, we determine that oral argument is unnecessary and that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for vacation in a memorandum decision rather than an opinion. *See* W. Va. R. App. P. 21.

Mr. Barker, a clinical supervisor, injured his lower back on March 3, 2018, while moving furniture and rehanging doors. The claim was held compensable for lower back strain on April 16, 2018. The claim administrator added lumbar intervertebral disc disorder with radiculopathy to the claim on October 24, 2018. Mr. Barker has a history of preexisting and noncompensable lower back conditions, which includes degenerative disease and diabetic peripheral neuropathy. In 1999, he sustained a noncompensable injury to his lower back while lifting a couch, which required a right L4-L5 laminectomy and L5-S1 discectomy.

On August 13, 2019, Marsha Bailey, M.D., performed an independent medical evaluation in which she noted that Mr. Barker would have the permanent work restriction of lifting no more than fifty pounds. Dr. Bailey placed him in Category II-E from Table 75 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*") for 10% impairment. He also qualified for 1% impairment under Category II-F for his lower back surgery, and 2% under Category II-G for his second lower back surgery. Mr. Barker's range of

---

[1] Petitioner Jerrald Barker is represented by counsel Reginald D. Henry, and Respondent Rescare is represented by counsel Jeffrey B. Brannon.

motion measurement was pain restricted and invalid for determining impairment. Sensory examination of the left lower extremity showed decreased sensation in a distribution consistent with diabetic peripheral neuropathy. Under the Range of Motion Model, Dr. Bailey found 13% impairment. Dr. Bailey then placed Mr. Barker in Lumbar Category III from West Virginia Code of State Rules § 85-20-C, which allows for 10% to 13% impairment. Dr. Bailey's finding of 13% impairment needed no adjustment. Dr. Bailey apportioned 50% of Mr. Barker's impairment for his first back surgery and for his age-related degenerative spine disease. Dr. Bailey found 7% impairment for the compensable injury. Based on Dr. Bailey's evaluation, the claim administrator granted Mr. Barker a 7% permanent partial disability award on September 11, 2019.

Bruce Guberman, M.D., performed an independent medical evaluation on March 18, 2020, in which he opined that Mr. Barker was possibly a surgical candidate and he was waiting for the opinion of a neurosurgeon. Therefore, he had not yet reached maximum medical improvement and an impairment rating was not recommended. In an August 3, 2020, supplemental independent medical evaluation, Dr. Guberman noted that Mr. Barker was seen by a neurosurgeon, and surgery was not recommended. Dr. Guberman opined that Mr. Barker had reached maximum medical improvement, and placed him in Category II-E from Table 75 of the AMA *Guides* for 10% impairment. From Table 82, Dr. Guberman found 5% impairment for abnormal lateral flexion range of motion in the lumbar spine. He determined that Mr. Barker had weakness in dorsiflexion of the left ankle of the left extensor hallucis longus due to residual radiculopathy at L5. He assessed 3% whole person impairment from Table 21 for the deficit. Dr. Guberman's total combined whole person impairment rating was 17%. Dr. Guberman placed Mr. Barker in Lumbar Category III from West Virginia Code of State Rules § 85-20-C, which allows for between 10% and 13%, and adjusted the rating to 13%. Regarding apportionment, it was determined that Mr. Barker had no symptoms or limitations prior to the compensable injury, and Dr. Guberman declined to apportion the claim. All of the 13% impairment was attributed to the compensable injury.

On October 28, 2020, Michael Kominsky, D.C., conducted an independent medical evaluation, and opined that Mr. Barker had reached his maximum degree of medical improvement. However, Dr. Kominsky recommended that Mr. Barker return to his neurosurgeon for a repeat MRI and consultation to determine the best course for management of his continued lower back pain and lower extremity weakness. With respect to impairment, Dr. Kominsky opined that Mr. Barker had 13% whole person impairment and stated:

> This patient did not have any pre-existing residual pain or loss of function prior to the injury. He was functioning at a high level of his functional capacity during his essential work task at his job. Also, he was not undergoing any treatments for his low back prior to this injury. He also had no radicular symptoms, no interference of activities of daily living and there was no impairment rating on record. Therefore, in my opinion within a reasonable degree of medical certainty, the 13% whole person impairment is entirely related to his 03/03/2018 injury and no apportionment is considered in this case.

Dr. Kominsky further stated that if any previous awards have been given for the conditions that he rated, they should be subtracted from the final impairment.

Mr. Barker was seen by David Soulsby, M.D., on January 27, 2021, for an independent medical evaluation. Dr. Soulsby reviewed the records, conducted an examination, and determined that Mr. Barker had reached maximum medical improvement. In accordance with the AMA *Guides*, Dr. Soulsby found 29% impairment. However, using Table § 85-20-C, the calculated impairment was adjusted to 13%. In discussing apportionment, Dr. Soulsby noted that Mr. Barker had previously undergone a lumbar laminectomy for herniated disc at L4-5, in addition to having multilevel degenerative disc disease and spinal stenosis. Because of Mr. Barker's preexisting disease and comorbidities, Dr. Soulsby concluded that only 50% of the observed impairment was found to be related to the injury which occurred on March 3, 2018. Therefore, he recommended 7% whole person impairment. Dr. Soulsby also reviewed the reports from Drs. Guberman and Kominsky and opined that both doctors correctly found 13% impairment under the AMA *Guides*. However, Dr. Soulsby found that both physicians failed to apportion for Mr. Barker's prior disc herniation requiring laminectomy and his other preexisting conditions and comorbidities.

The Respondent obtained a supplemental record review and opinion report from Dr. Bailey. In her report dated May 7, 2021, Dr. Bailey opined that Dr. Guberman's physical examination findings were inconsistent with Mr. Barker's known long standing history of chronic diseases, which included chronic lower back pain, lower extremity radiculopathy, diabetic peripheral neuropathy, and lower extremity vascular disease. Dr. Bailey concluded that Dr. Guberman overlooked Mr. Barker's substantial confounding personal medical conditions when he made the decision not to apportion his impairment rating. It was Dr. Bailey's opinion that Mr. Barker's most accurate and true impairment as a result of his March 3, 2018, injury was 7% whole person impairment.

In a decision dated August 20, 2021, the Office of Judges affirmed the September 11, 2019, order of the claim administrator awarding a 7% permanent partial disability award. The Office of Judges noted that Mr. Barker had preexisting conditions unrelated to his work. It was noted that he was evaluated by sound independent medical evaluators, all of whom found 13% whole person impairment utilizing the AMA *Guides*. However, it was noted that both Drs. Soulsby and Bailey apportioned half of Mr. Barker's impairment of 13% to his preexisting non-compensable conditions and determined 7% would be rating for the compensable injury. Referencing West Virginia Code § 23-4-9b, the Office of Judges concluded that "it is clear in this case that the claimant had pre-existing conditions related to the compensable body party and two medical professionals opined as to the percentage unrelated to the injury at issue." As such, the Office of Judges determined that the physicians who apportioned presented a more reliable reflection of Mr. Barker's condition, and that he had 7% whole person impairment attributable to the injury on March 3, 2018. On January 20, 2022, the Board of Review adopted the findings of facts and conclusions of law of the Office of Judges and affirmed the decision.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision affirms prior rulings by both the Workers' Compensation Commission and the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is based upon a material misstatement or

3

mischaracterization of the evidentiary record. *See* W. Va. Code § 23-5-15(c) & (d). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

Mr. Barker argues that the preponderance of the evidence establishes that he sustained more than 7% whole person impairment from his compensable injury. He asserts that evidence was ignored by the Office of Judges indicating that he had not had any symptoms or treatment for his lower back since the time of his recovery from his 1999 surgery, and that he was working full-time and performing laborious duties at the time of the instant injury. Mr. Barker maintains that Dr. Guberman's and Kominsky's reports should have been given greater weight by the Office of Judges. In contrast, the employer argues that when the applicable law to this claim is applied to the facts and evidence of record, it is clear that the opinions of Dr. Guberman and Dr. Kominsky are not reliable. The primary difference in the recommendations of permanent partial impairment for the compensable injury was apportionment.

The controlling statute for apportionment is West Virginia Code § 23-4-9b (2003), which provides, in part:

> Where an employee has a definitely ascertainable impairment resulting from an occupational or a nonoccupational injury, disease or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one, article three of this chapter, the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury. Compensation shall be awarded only in the amount that would have been allowable had the employee not had the preexisting impairment.

This Court has previously held that,

> [t]he purpose of W. Va. Code § 23-4-9b (2003) is to disallow any consideration of any preexisting definitely ascertainable impairment in determining the percentage of permanent partial disability occasioned by a subsequent compensable injury, except in those instances where the second injury results in total permanent disability[.]

Syl. Pt. 2, in part, *SWVA, Inc. v. Birch*, 237 W. Va. 393, 787 S.E.2d 664 (2016).

In a recent case, this Court established a new standard for evaluating definitely ascertainable preexisting impairment under West Virginia Code § 23-4-9b. *See* Syl. Pt. 6, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). In *Duff*, we held:

> Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This

4

requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

*Id.*

The record indicates that Mr. Barker has a history of preexisting conditions. Drs. Guberman and Kominsky did not apportion in this case, but Drs. Soulsby and Bailey apportioned half of Mr. Barker's impairment of 13% to his preexisting noncompensable conditions. However, the issue of whether or not Mr. Barker has a definitely ascertainable impairment resulting from his preexisting conditions, and how those conditions contributed to his overall impairment, must still be determined. Accordingly, we vacate the Board of Review's decision and remand the case to the Board for further development of the evidentiary record and analysis under *Duff.*

Vacated and remanded with directions.

**ISSUED: November 26, 2024**

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING:**

Chief Justice Tim Armstead

Armstead, Chief Justice, dissenting:

The majority determines that under the Court's holding in *Duff v. Kanawha Cnty. Comm'n,* 250 W. Va. 510, 905 S.E.2d 528 (2024), the Board of Review's ruling must be vacated and the case must be remanded for further evidentiary development. *See* Syl. Pt. 6, *Duff* ("Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant 'has a definitely ascertainable impairment resulting from' a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).").  While I agree that applying our ruling in *Duff* leads to this result, I

dissent because I disagree with the Court's holding in *Duff*. As I explained in my separate opinion in that case:

> the majority's interpretation of West Virginia Code § 23-4-9b is not supported by the plain language of the statute or by our long-standing recognition that a workers compensation claimant has the burden of proof, [therefore] I disagree with the majority's ruling that the employer bears the burden to prove (1) that the claimant has a definitely ascertainable impairment resulting from a preexisting condition; (2) that the preexisting condition contributed to the claimant's overall impairment after the compensable injury; and (3) the precise degree of impairment that is attributable to the preexisting condition.
>
> By shifting the burden to the employer, the majority is treating apportionment as an affirmative defense. West Virginia Code § 23-4-9b does not contain any language providing that apportionment should be treated as an affirmative defense that the employer is responsible for asserting.

*Duff*, 250 W. Va. at ____, 905 S.E.2d at 542-43 (Armstead, C.J., concurring, in part, and dissenting, in part).

By applying our ruling in *Duff* to the present case, I believe that this Court continues to misapply the plain language of West Virginia Code § 23-4-9b. Therefore, I dissent.

6