# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Travis Williams,**
**Claimant Below, Petitioner**

**vs.)    No. 21-1013**    (BOR Appeal No. 2056901)
                    (Claim No. 2019025140)

**WV American Water Company,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Travis Williams appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent West Virginia American Water Company filed a timely response.[1] The issue on appeal is the compensability of the claim for carpal tunnel syndrome. The claims administrator rejected the claim on July 1, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the rejection of the claim in its order dated June 4, 2021, which was affirmed by the Board of Review on November 19, 2021. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

Mr. Williams works as a meter reader for the employer. He alleged that he developed bilateral carpal tunnel syndrome as a result of his occupational duties as a meter reader. In an Application for Benefits, dated June 2, 2019, he indicated he injured his hands by "repetitive use of meter key opening meter lids, twisting motion in wrists." The physician's section of this form was completed by Michael Kominsky, D.C. Dr. Kominsky diagnosed Mr. Williams with carpal tunnel syndrome for the left upper extremity and carpal tunnel syndrome of the right upper extremity.

Mr. Williams has a complicated medical history with complaints of upper extremity paresthesias. On October 3, 2013, he had bilateral upper extremity nerve conduction velocity ("NCV") and electromyography ("EMG") studies with Barry Vaught, M.D., for a clinical history of numbness and tingling in both of his arms. Dr. Vaught reported a normal study without electrophysiological evidence for carpal tunnel syndrome or cervical radiculopathy in either upper extremity. Mr. Williams has a United States Air Force service connected disability of 40% for the diagnosis of paralysis of all radicular nerve groups and 20% for the diagnosis of paralysis of upper radicular nerve groups. His chronic neck and upper extremity issues were enhanced by a motor

---

[1]Travis Williams is represented by Reginald D. Henry, and West Virginia American Water Company is represented by Jane Ann Pancake, T. Jonathon Cook, and Jeffrey B. Brannon.

vehicle accident that occurred on April 8, 2019. On October 14, 2019, Mr. Williams was diagnosed with herniated cervical disc at C6-C7 to the right, right C7 radiculopathy, cervical post fusion syndrome at C5-C6, cervical sprain, and status post motor vehicle accident. On December 13, 2019, Mr. Williams underwent a C5-C6 anterior cervical discectomy and fusion performed by Rajesh Patel, M.D. Unfortunately, the operation failed to fully resolve his symptoms, and he went on to receive pain management treatment, as well as multiple injections and procedures.

Prior to filing for workers' compensation benefits, Mr. Williams underwent an MRI of the cervical spine on May 15, 2019. The impression was:

> Anterior cervical fusion C5-6. Right paracentral annular rent present at C6-7 causing minimal right foraminal encroachment. Right paracentral disc bulge present at C7-T1 causing minimal right foraminal encroachment.

The reason for the MRI was noted to be "sprain/cervical disc displacement." Following the MRI, Mr. Williams underwent a medical evaluation with Dr. Kominsky on June 13, 2019. At that time, objective evaluation revealed pain with palpation along the thenar eminence bilaterally; positive Tinel's sign bilaterally; positive Phalen's test bilaterally; diminished grip strength on the right; painful flexion and extension on the right; and limited ulnar and radial deviation on the left with pain. Dr. Kominsky noted that his repeated use of a T-type instrument multiple times a day in his essential work tasks creates a great deal of stress to both wrists, and likely contributed to his carpal tunnel syndrome within a reasonable degree of medical certainty. Dr. Kominsky diagnosed work-induced bilateral carpal tunnel syndrome and bilateral median neuropathy at the wrist.

In an order dated July 1, 2019, the claims administrator rejected Mr. Williams's claim for workers' compensation benefits. The order specifically noted that "[t]here is no evidence that the condition was acute in nature. Furthermore, there is no evidence that your work setting puts you at a high risk for developing carpal tunnel syndrome." Mr. Williams protested the claims administrator's decision and testified via deposition on November 19, 2019, that he had been working for West Virginia American Water Company for approximately eleven years. He started out as a "utility man" reading water meters. The company did not have automated meters at the time, and he had to lift every meter lid manually in order to read the meter. The meter lids weighed about fifteen pounds, and Mr. Williams stated that he used a "T-handle shaped meter key" to open the meter lids. He estimated that he read about 8,000 meters a month for his first two-and-a-half-years working as a "utility man." He then began working as a field representative which required him to read meters, change out meters and pressure regulators, and to perform certain computer work related to his job. Prior to the automated system adopted in 2016, Mr. Williams testified that he lifted approximately 100 lids per day. Changing out the encoders and regulators required the use of channel locks and crescent wrenches that needed significant force. He began seeing a chiropractor for his back around 2009 or 2019 and had neck surgery in 2013. Mr. Williams acknowledged having arthritis in his neck and back.

During his deposition, Mr. Williams stated that he first noticed symptoms in his hands in 2011 or 2012. His knuckles would swell, and his pinky and index fingers would go numb. Over time, the symptoms progressively worsened. He denied any prior injuries to his hands or wrists.

When he was involved in a car accident in 2019, he sought treatment with Dr. Kominsky and reported the numbness in his hands. Dr. Kominsky ordered an EMG, which showed severe carpal tunnel syndrome.

Mr. Williams underwent an MRI of the left shoulder on February 13, 2020, due to pain after a motor vehicle accident. He also reported that he was experiencing pain while lifting. The MRI revealed acromioclavicular arthrosis with increased T2 signal in the distal clavicle, acromion, and acromioclavicular joint. The impression was:

> Stigmata of rotator cuff impingement with acromioclavicular arthrosis. Subacromial subdeltoid bursitis. Supraspinatus and infraspinatus tendinosis. Severe biceps tendinosis.

The record contains a record review report from Marsha L. Bailey, M.D., dated June 26, 2020. In her report, Dr. Bailey reviewed Dr. Kominsky's report and stated:

> On May 16, 2019, Dr. Kominsky performed bilateral upper extremity nerve conduction studies and electromyograms for the clinical history of a 37 year old male with pain in his lower back radiating down both of his legs and neck pain radiating down both arms. Mr. Williams advised Dr. Kominsky he had numbness and tingling in both of his legs and arms. Dr. Kominsky reported an abnormal study with electrophysiological evidence for median nerve neuropathy across the right and left wrists consistent with bilateral carpal tunnel syndrome, worse on the right. Dr. Kominsky reported no evidence of an acute or chronic cervical radiculopathy. Dr. Kominsky attached tables and tracings to his report. However, significant portions of the report data were blackened out and illegible.

> Based upon the medical records available for review, it is my opinion Mr. Williams certainly has a complicated medical history including cervical spine and lumbar spine disease treated with a C5-C6 anterior cervical discectomy and fusion on December 19, 2013 by Dr. Patel when he was only 32 years old. Unfortunately, Mr. Williams' operation failed to fully resolve his symptoms and he went on to receive pain management treatment at the VAMC as well as from Dr. Thymius including multiple injections and procedures. Mr. Williams has a United States Air Force service connected disability of 40 percent for the diagnosis of paralysis of all radicular nerve groups as well as 20 percent for the diagnosis of paralysis of upper radicular nerve groups. Mr. Williams' chronic neck and upper extremity complaints were complicated by a motor vehicle accident that occurred on approximately April 18, 2019, which caused him to return to Dr. Patel on October 14, 2019, at which time Dr. Patel diagnosed herniated cervical disc at C6-C7 to the right, right C7 radiculopathy, cervical post fusion syndrome at C5-C6, cervical sprain and status post motor vehicle accident.

Due to Mr. Williams' complaints of upper extremity paresthesias, he had bilateral NCV's and EMG's with Dr. Vaught on October 3, 2013 that was interpreted as normal. . . .

. . . .

The chiropractic NCV and EMG report Mr. Williams submitted from Dr. Kominsky dated May 16, 2019 is insufficient to diagnose carpal tunnel syndrome. Although Dr. Kominsky provided a narrative opinion of the diagnosis of bilateral carpal tunnel syndrome, right greater than left, the supporting data is incomplete. The attached nerve conduction study tables, both sensory and motor, are missing the most important data, the median nerve distal latency values. On page 2 of Dr. Kominsky's NCV and EMG report titled Nerve Conduction Studies Antisensory Summary table, Mr. Williams' right and left median nerve distal sensory latencies are blackened out and unreadable. On the Motion Summary table on page 2, Mr. Williams' right median nerve distal motor latency is blackened out. His left median nerve distal motor latency is normal. In his office record dated June 13, 2019, Dr. Kominsky wrote Mr. Williams complained of bilateral hand numbness and tingling. No additional description of Mr. Williams' symptoms was included, such as if those symptoms were or were not in the median nerve distribution, followed another peripheral nerve pattern, a dermatome or were radicular in nature. Dr. Kominsky included a one sentence occupational history, "he is required to use a T-type bar to twist open the manhole plates to check the meters." No other occupational history was provided. Without any specific medical evidence to support his conclusions, Dr. Kominsky diagnosed work induced bilateral carpal tunnel syndrome and median neuropathy at the wrists.

Dr. Bailey opined that Dr. Kominsky's diagnosis of occupationally related bilateral carpal tunnel syndrome was not supported by the available medical evidence. It was Dr. Bailey's opinion that Mr. Williams has not met his burden of proof that he has the diagnosis of carpal tunnel syndrome as a result of his occupational responsibilities.

In an independent medical evaluation report dated July 7, 2020, Prasadarao Mukkamala, M.D., noted that Mr. Williams complained of numbness in both hands at the time of his evaluation. Physical examination revealed normal range of motion for all joints in both upper extremities. Motor examination and thenar muscle strength was normal with no evidence of thenar muscle atrophy. There were no trophic changes in the hands. Tinel's sign was positive over the median nerve at the wrist in both hands. Obesity was noted to a be significant non-occupational risk factor in the claim. Dr. Mukkamala diagnosed Mr. Williams with bilateral borderline carpal tunnel syndrome, and he opined that the carpal tunnel syndrome was not causally related to his occupational activities. Dr. Mukkamala further opined that his job duties did not involve the degree of force and repetition necessary to cause carpal tunnel syndrome.

In a final decision dated June 4, 2021, the Office of Judges held that Mr. Williams failed to show by a preponderance of the evidence that he has bilateral carpal tunnel syndrome and that

it is causally related to his occupation. The claims administrator's order dated July 1, 2019, was affirmed. The Office of Judges found that the weight of the evidence does not support Dr. Kominsky's opinion that the carpal tunnel syndrome is related to Mr. Williams's occupation. Regarding the evidence, the Office of Judges stated:

> Based upon the medical evidence of record, it is found that the claimant has failed to show by a preponderance of evidence that he has occupational bilateral CTS. The only medical evidence of record supporting a finding of occupational CTS are the medical findings of Dr. Kominsky; however, Dr. Kominsky's medical findings are not found to be reliable or persuasive in light of the medical evidence of record. Dr. Bailey noted that Dr. Kominsky's EMG data was incomplete and could not be used to establish a diagnosis of CTS. Specifically, she noted that Dr. Kominsky's nerve conduction study tables were missing the median nerve distal latency values, which is the most important data in diagnosing CTS. Additionally, Dr. Kominsky's EMG findings are not consistent with the 2013 EMG findings of Dr. Barry Vaught. Although the record clearly indicates that the claimant was symptomatic by 2013, Dr. Vaught's October 3, 2013, EMG of the claimant's upper extremities revealed no evidence of CTS. Furthermore, in comparing the relative evidentiary weight of Dr. Vaught and Dr. Kominsky's EMG findings, it is noted that Dr. Vaught is a neurologist, while Dr. Kominsky is a chiropractor. For the foregoing reasons, Dr. Kominsky's EMG findings are not found to be credible.

The Office of Judges further determined that the weight of the evidence does not support Dr. Kominsky's opinion that the bilateral carpal tunnel syndrome is related to Mr. Williams's occupation because his opinion was found to be at odds with the medical findings of Drs. Bailey and Mukkamala, who both opined that his occupation did not cause his bilateral carpal tunnel syndrome. Also, Dr. Kominsky's EMG diagnosis was found to be incomplete and unpersuasive.

The Office of Judges noted that the record suggests that Mr. Williams developed upper extremity numbness, tingling, and weakness before he started working for the employer. In fact, progress notes from the VA dated August 7, 2015, and November 23, 2016, indicate that he developed weakness in his right arm and started dropping objects following a service-related weight-lifting injury in 2003. The Office of Judges further noted that Mr. Williams developed symptoms consistent with carpal tunnel syndrome following noncompensable cervical fusion surgery in 2013. It was found that the weight of the evidence points to a non-occupational etiology for Mr. Williams's upper extremity symptomatology. On November 19, 2021, the Board of Review adopted the findings of fact and conclusions of law found by the Office of Judges and affirmed the final decision.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision affirms prior rulings by both the Workers' Compensation Commission and the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is based upon a material misstatement or mischaracterization of the evidentiary record. *See* W. Va. Code §§ 23-5-15(c) & (d). We apply a

de novo standard of review to questions of law. *See Justice v. W. Va. Off. Ins Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we agree with the findings and conclusions of the Office of Judges, as affirmed by the Board of Review. Pursuant to West Virginia Code of State Rules § 85-20-4, a determination of whether carpal tunnel syndrome is work-related must be made through a careful review of the claim history, physical examination, and appropriate diagnostic tests and examinations. The medical record indicates that Mr. Williams has been receiving medical treatment for his neck, back, and arm numbness/weakness, for many years and that his bilateral carpal tunnel syndrome is the result of his extensive pre-existing issues. This Court has long held that "[i]n order to establish compensability an employee who suffers a disability in the course of his employment must show by competent evidence that there was a causal connection between such disability and his employment." Syl. Pt. 3, *Deverick v. State Workmen's Compensation Director*, 150 W. Va. 145, 144 S.E.2d 498 (1965). The weight of evidence does not support Dr. Kominsky's opinion that Mr. Williams's carpal tunnel syndrome is related to his occupation. Therefore, the Office of Judges and Board of Review did not err in determining that Mr. Williams is unable to prove the alleged bilateral carpal tunnel syndrome is due to a work injury.

Affirmed

**ISSUED: September 14, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn