# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Steven Gration,**
**Claimant Below, Petitioner**

**vs.)**     **No. 21-0949**     (BOR Appeal No. 2056661)
                          (Claim No. 2019010976)

**Contura Energy, Inc.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION


Petitioner Steven Gration appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Contura Energy, Inc., filed a timely response.[1] The issues on appeal are medical benefits, additional compensable conditions, and temporary total disability benefits. The claims administrator denied a request for authorization of a right L5-S1 transforaminal epidural steroid injection on December 18, 2019. On July 15, 2020, the claims administrator denied a request for the addition of lumbosacral intervertebral disc displacement, lumbar intervertebral disc displacement, and sacroiliac joint sprain to the claim. Finally, on July 16, 2020, the claims administrator denied a request to reinstate temporary total disability benefits. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its April 21, 2021, Order. The Order was affirmed by the Board of Review on October 22, 2021. Upon our review, we determine that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. *See* W. Va. R. App. P. 21.

Mr. Gration, an electrician, was injured on November 10, 2018, when he stepped in a hole, twisted, and fell. He was treated at Beckley Area Regional Hospital that day and stated that he stepped in a hole, twisted his knee, and heard a pop. The claim was held compensable for lumbar sprain, right knee sprain, and left elbow contusion on November 15, 2018.

On December 5, 2018, Mr. Gration was treated by Rajesh Patel, M.D., for lower back and right knee pain. Dr. Patel diagnosed right L5 radiculitis, lumbar sprain, lumbago, lumbar facet, pain, right knee pain, and possible lumbar disc herniation. Mr. Gration underwent a lumbar MRI on January 4, 2019, which revealed desiccation of the L4-L5 disc with mild disc space narrowing at L5-S1; atrophy of the right paraspinous muscles and the lower lumbar level; and stable L4-5 and L5-S1 disc bulges. On March 11, 2019, Dr. Thymius administered a right sacroiliac joint

---

[1]Petitioner, Steven Gration, is represented by Reginald D. Henry, and respondent, Contura Energy, Inc., is represented by H. Dill Battle III.

1

steroid injection. Mr. Gration presented for a follow-up appointment on March 20, 2019, and reported that the injection provided some relief but then wore off. Dr. Patel diagnosed right sacroiliac joint pain, right L5 radiculitis, lumbar sprain, right sacroiliac joint sprain, lumbago, and knee pain.

Mr. Gration underwent a sacroiliac joint injection on May 1, 2019, for the diagnosis of sacroilitis. In a May 15, 2019, follow-up, Dr. Patel stated that sacroiliac joint injections had not provided much pain relief for Mr. Gration. His diagnoses were L5-S1 lumbar disc bulging, L4-5 lumbar disc bulging, possible sacroiliac pain, and facet sprain. On June 12, 2019, the claims administrator granted authorization of a right L5-S1 transforaminal epidural steroid injection, which was administered on June 17, 2019. On June 29, 2019, Mr. Gration was seen by Melissa Lilly, PA-C, for follow-up and reported that the injection provided 70% pain relief for four days, then his pain returned. PA-C Lilly assessed lumbosacral intervertebral disc displacement and sacroilitis. She recommended a series of three injections and then referral back to Dr. Patel for surgical options if the injections did not work. On July 30, 2019, the claims administrator authorized right L5-S1 transforaminal epidural steroid injections. Mr. Gration underwent a transforaminal epidural steroid injection on September 17, 2019.

On October 29, 2019, Prasadarao Mukkamala, M.D., performed an independent medical evaluation in which he found that Mr. Gration had reached maximum medical improvement and required no further treatment. On October 30, 2019, Mr. Gration returned to PA-C Lilly for follow-up after his injection. He reported 60-70% pain relief for less than two weeks. PA-C Lilly recommended he proceed with the third injection.

Rebecca Thaxton, M.D., opined in a November 18, 2019, physician review that right L5-S1 transforaminal epidural steroid injections should not be authorized. She noted that the compensable condition in the claim is low back strain and that a January 7, 2019, MRI showed disc desiccation, narrowing, atrophy of the muscles, and bulges at L4-5 and L5-S1. Dr. Thaxton noted that Dr. Mukkamala found Mr. Gration to be at maximum medical improvement with no motor sensory deficit or signs of radiculopathy. Dr. Thaxton opined that while degenerative changes may prolong recovery, Mr. Gration did not require the requested transforaminal epidural steroid injections for the compensable injury. On December 18, 2019, the claims administrator denied authorization of transforaminal epidural steroid injections.

In a June 22, 2020, physician review, Syam Stoll, M.D., recommended that Lumbar sprain, L5-S1 disc bulge, L4-5 disc bulge, and sacroiliac sprain not be added to the claim. He opined that the mechanism of injury did not support a causal connection between the conditions and the compensable injury. Dr. Stoll noted that Mr. Gration sustained a lumbar sprain as a result of the compensable injury and that he reached maximum medical improvement for the condition. He opined that Mr. Gration's ongoing complaints of lumbar pain are unrelated to the compensable injury. On July 15, 2020, the claims administrator denied a request by Dr. Patel for the addition of lumbosacral intervertebral disc displacement, lumbar intervertebral disc displacement, and sacroiliac sprain to the claim. The claims administrator closed the claim for temporary total disability benefits on July 16, 2020.

On October 14, 2020, Dr. Patel stated that Mr. Gration was not at maximum medical improvement. He opined that a spinal cord stimulator should be considered and if that failed, then Mr. Gration would be at maximum medical improvement. In an October 26, 2020, addendum to his report, Dr. Patel opined that sacroiliac joint sprain and lumbar sprain are the direct result of the compensable injury. He stated that the L4-5 and L5-S1 disc protrusions could have resulted from the compensable injury but also could have been preexisting. Regardless, Dr. Patel asserted that the disc protrusions became symptomatic as a result of the compensable injury and treatment for such should be authorized.

On November 25, 2020, Kenneth Fortgang, M.D., performed an age of injury analysis of Mr. Gration's lumbar CT scan in which he determined that there were no acute findings. Dr. Fortgang also analyzed the lumbar MRI and concluded that the findings noted were all chronic in nature.

The Office of Judges affirmed the claims administrator's denial of authorization of a right L5-S1 transforaminal epidural steroid injection; denial of a request for the addition of lumbosacral intervertebral disc displacement, lumbar intervertebral disc displacement, and sacroiliac joint sprain to the claim; and denial of a request to reinstate temporary total disability benefits. The Office of Judges found that the evidence did not support the addition of the requested conditions to the claim. It relied on Dr. Fortgang's opinion that the MRIs showed chronic findings and no acute injuries. Dr. Stoll opined that Mr. Gration's mechanism of injury does not support the addition of the requested conditions to the claim.

Regarding the requested transforaminal epidural steroid injections, the Office of Judges concluded that the treatment was not reasonable or necessary for a compensable condition. Further, Mr. Gration already underwent two injections, neither of which provided lasting pain relief. The Office of Judges also found that additional temporary total disability benefits were not necessary. Dr. Mukkamala found Mr. Gration had reached maximum medical improvement. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its order on October 22, 2021.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision affirms prior rulings by both the Workers' Compensation Commission and the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is based upon a material misstatement or mischaracterization of the evidentiary record. *See* W. Va. Code §§ 23-5-15(c) & (d). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we find that the Board of Review's decision is the result of erroneous conclusions of law. Pursuant to Syllabus Point 5 of *Moore v. ICG Tygart Valley, Inc.*, 247 W. Va. 292, 879 S.E.2d 799 (2022),

[a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

The evidence of record indicates Mr. Gration had preexisting lumbar spine issues; however, it also indicates that he had no treatment between 2013 and when the compensable injury occurred on November 10, 2018. Following the compensable injury, Mr. Gration suffered from continuous low back symptoms. Dr. Patel opined that the disc protrusions became symptomatic as a result of the compensable injury. In accordance with our holding in *Moore*, the case is reversed and remanded with instructions to authorize a right L5-S1 transforaminal epidural steroid injection; add lumbosacral intervertebral disc displacement, lumbar intervertebral disc displacement, and sacroiliac joint sprain to the claim; and grant the request to reinstate temporary total disability benefits as supported by the evidence of record.

Reversed and Remanded.

**ISSUED: September 19, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**CONCURRING, IN PART, AND DISSENTING, IN PART:**

Justice C. Haley Bunn

**DISSENTING:**

Justice Tim Armstead


**Bunn, Justice, concurring, in part, and dissenting, in part:**

I concur with the majority's decision to reverse and remand the Board of Review's order in this case and the majority's conclusion that Mr. Gration was entitled to an analysis of his injury under our prior holding in *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), because there is some indication that the alleged aggravation of his preexisting, degenerative condition that the workers' compensation tribunals found to be noncompensable

might be related to his workplace injury and thus could be compensable under *Moore*. *See* Syl. pt. 5, *id.* ("A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.").

However, I disagree with the majority's decision to conduct this analysis, itself, and to remand with directions to find Mr. Gration's condition compensable in accordance with the *Moore* factors. Instead, this case should have been remanded to permit the tribunals who are tasked with determining compensability in the first instance to consider Mr. Gration's preexisting condition in accordance with *Moore* and to decide whether the alleged aggravation of this condition is related to his compensable injury. The workers' compensation tribunals are responsible for determining the facts in workers' compensation cases, and our review of their decisions is limited to considering whether there is error in the tribunals' findings of fact or their legal conclusions. *See, e.g.*, W. Va. Code § 23-5-15(d) ("If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. *The court may not conduct a de novo reweighing of the evidentiary record.* If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record." (emphasis added)). If this Court determines the lower tribunals have erred in rendering their rulings, the governing standard of review prohibits this Court from reweighing the record evidence and issuing a new decision applying the law to the facts of the case as we found them. Rather, this Court must exercise restraint and remand the case for the workers' compensation tribunals to undertake this factual inquiry.

Because I feel the majority has overstepped its role by reweighing the evidentiary record in this case instead of permitting the tribunals charged with this task to perform their prescribed function, I dissent from the majority's decision to the extent that it determined that Mr. Gration's injuries were compensable under *Moore*, and reversed and remanded for entry of an order of compensability, rather than reversing the finding of noncompensability and remanding the case to the workers' compensation tribunals to conduct the *Moore* analysis themselves. Accordingly, I respectfully concur, in part, and dissent, in part, from the majority's decision in this case.

**Armstead, Justice, dissenting:**

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.