## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jason E. Carter,**
**Claimant Below, Petitioner**

**vs.)**     **No. 22-0114**   **(**BOR Appeal No. 2057000)
                                (JCN: 2019003105)

**GW Noble Trucking, LLC,**
**Employer Below, Respondent**


## MEMORANDUM DECISION


Petitioner Jason E. Carter appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent GW Noble Trucking, LLC, filed a timely response.[1] The issues on appeal are medical treatment and compensability. The claims administrator (1) denied authorization for physical therapy for the lower back on April 29, 2020; (2) denied authorization for a consultation at the West Virginia University ("WVU") Medicine Spine Center on June 17, 2020; (3) denied authorization for (a) an emergency room visit, admission, and treatment at Charleston Area Medical Center ("CAMC"), and transfer of care to WVU, and (b) decompression and thoracic surgery on July 15, 2020, and (4) denied the addition of M51.04 (thoracic myelopathy) and M46.04 (thoracic spinal stenosis) as compensable diagnoses on August 26, 2020. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decisions in its June 25, 2021, order. The order was affirmed by the Board of Review on January 20, 2022. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

Petitioner, a truck driver, fell on his back and buttocks climbing into his truck while working for respondent on August 2, 2018. Prior to the August 2, 2018, injury, petitioner, who is obese,[2] had a history of falling down and back pain dating to 2011. According to the August 2, 2018, emergency room note, petitioner previously injured his back "several weeks ago" when he was hit by a piece of equipment while also on the job and "has had back pain since then but has not had the weakness and has been ambulating with little issue." Due to the fall on August 2, 2018, Pierre Charbonniez, D.O., diagnosed petitioner with lumbar back pain.

---

[1]Petitioner is represented by Reginald D. Henry, and respondent is represented by H. Dill Battle, III.

[2]Petitioner was approximately six foot tall and weighed 451 pounds on August 2, 2018.

Petitioner needed surgery, and Robert Joe Crow, M.D., performed a decompressive laminectomy at T12-L1 on August 2, 2018. Petitioner was diagnosed with cauda equina syndrome. The claims administrator held the claim compensable for "lumbar" issues on August 9, 2018. The Office of Judges' June 25, 2021, order reflects that injury of cauda equina, initial encounter, cauda equina syndrome, and injury of cauda equina, subsequent encounter, were later added as compensable diagnoses.

Petitioner was seen for an independent medical evaluation by Syam B. Stoll, M.D., on June 6, 2019. Dr. Stoll stated that petitioner's extensive and preexisting thoracic and lumbar spondylosis and spondylolysis, which were advanced for a twenty-nine-year-old individual, "would not occur on an acute basis but took years to develop secondary to chronic severe obesity." Dr. Stoll further found that petitioner did not exhibit the symptoms of cauda equina syndrome. Therefore, Dr. Stoll determined that petitioner was at maximum medical improvement regarding the compensable injury. Dr. Stoll found that Petitioner's L5 radiculopathy was preexisting and due to bilateral pars defect and lumbar spondylosis. While petitioner had left foot drop, Dr. Stoll stated that the condition was related to the chronic L5 radiculopathy. Based on imaging studies, Dr. Stoll found that petitioner needed the August 2, 2018, decompressive laminectomy. However, Dr. Stoll stated that any ongoing treatment would be for petitioner's preexisting thoracic and lumbar spondylosis. Dr. Stoll noted that petitioner's use of a cane did not match his true physical capabilities as physical therapy records documented petitioner riding a motorcycle for prolonged periods.

In December 2019, petitioner was released to return to work and scheduled for a required physical. However, while entering his vehicle, petitioner slipped on ice and fell. Petitioner began having weakness in his legs again. Petitioner went from walking with a cane to walking with a walker to having to use a wheelchair. Dr. Crow requested authorization for additional physical therapy for petitioner's lower back on February 19, 2020. Rebecca Thaxton, M.D., reviewed Dr. Crow's request on March 5, 2020. Dr. Thaxton recommended that authorization for additional physical therapy be denied, finding that the additional physical therapy would be for the progression of petitioner's preexisting conditions and that the December 2019 fall constituted an independent intervening injury that caused the increase of symptoms. On April 29, 2020, the claims administrator denied the request for additional physical therapy for petitioner's lower back.

Petitioner fell again on May 11, 2020. Dr. Crow examined petitioner in the emergency room on May 12, 2020, and determined that he was symptomatic from disc osteophyte complex with cord compression in the upper thoracic spine. Dr. Crow recommended stabilization and then petitioner's transfer to the complex spine service at WVU. Following petitioner's transfer to the WVU Medicine Spine Center, John France, M.D., performed a decompression and thoracic surgery on May 15, 2020. The postoperative diagnoses included severe progressive thoracic myelopathy and multilevel thoracic spinal stenosis secondary to congenital stenosis with ossification of ligamentum flavum. In the operative report, Dr. France noted that several factors such as the August 2, 2018, compensable injury, the December 2019 fall, the May 2020 fall, and "a congenitally small spine and severe multilevel thoracic stenosis from T3 all the way down to about T12-L1" were "severe enough in their own right to cause [petitioner's] significant deterioration in ambulatory ability." However, Dr. France stated that "[i]t is very difficult to sort

out which of these contributes the most" and that "it is hard to tell which levels have finally put [petitioner] over the edge where he cannot ambulate."

Regarding petitioner's May 2020 fall, CAMC requested authorization for the emergency room visit, petitioner's admission and treatment at CAMC, and his subsequent transfer of care to WVU. Dr. Crow also requested authorization for petitioner's transfer to the WVU Medicine Spine Center. Dr. France sought authorization for the May 15, 2020, decompression and thoracic surgery. In reports dated May 19, 2020, and June 8, 2020, Dr. Thaxton recommended these authorization requests be denied. Like Dr. Stoll, Dr. Thaxton found that both petitioner's radiculopathy and his foot drop were preexisting conditions. Dr. Thaxton once again identified the December 2019 fall as an independent intervening injury. Dr. Thaxton noted that petitioner had another fall in May 2020 just prior to the decompression and thoracic surgery. Based on Dr. France's operative report, Dr. Thaxton concluded that the August 2, 2018, compensable injury was not the proximate cause of the condition treated by the May 15, 2020, surgery. On June 17, 2020, the claims administrator denied authorization for petitioner's transfer to the WVU Medicine Spine Center and, on July 15, 2020, denied authorization for (a) petitioner's May 2020 emergency room visit, admission, and treatment at CAMC and his subsequent transfer of care to WVU, and (b) the decompression and thoracic surgery.

Also, in July 2020, Dr. Crow submitted a diagnosis update seeking to add M51.04 (thoracic myelopathy) and M46.04 (thoracic spinal stenosis) as compensable diagnoses. As the clinical basis for the diagnosis update, Dr. Crow stated "see notes" but failed to attach any notes to the form. On July 28, 2020, Dr. Thaxton recommended that the proposed diagnoses should not be added to the instant claim. While the diagnosis update was the only report or record from Dr. Crow during July 2020, Dr. Thaxton noted that Dr. Crow diagnosed petitioner with thoracic myelopathy and thoracic spinal stenosis in February 2020 when Dr. Crow recorded a history of petitioner falling in December 2019. Therefore, Dr. Thaxton referenced her prior recommendations in finding that thoracic myelopathy and thoracic spinal stenosis were not caused by the compensable injury. On August 26, 2020, the claims administrator denied the addition of M51.04 (thoracic myelopathy) and M46.04 (thoracic spinal stenosis) as compensable diagnoses.

Petitioner was seen for an independent medical evaluation by David L. Soulsby, M.D., on November 10, 2020. Dr. Soulsby found that petitioner has a congenital shortening of pedicles resulting in a narrowing of the bony spine throughout the thoracic and lumbar regions. Dr. Soulsby stated that the congenitally short pedicles, like petitioner's degenerative disc disease and spondylolisthesis, constituted a preexisting condition unrelated to the compensable injury. Dr. Soulsby attributed the thoracic myelopathy and the thoracic spinal stenosis to the short pedicles creating a narrowing of the bony spine. Dr. Soulsby referenced Dr. France's operative report in finding that the compensable injury did not contribute to the causation or aggravation of petitioner's congenital stenosis and the ossification of the ligamentum flavum, which were preexisting conditions. After Dr. Soulsby received additional records, he issued a follow-up report on March 29, 2021. Dr. Soulsby stated that petitioner had falls both before and after the August 2, 2018, compensable injury, stating that "[t]his is a disease process that develops over time and not the result of an injury." Therefore, Dr. Soulsby concluded that cauda equina syndrome was the only condition that resulted from the compensable injury.

3

Petitioner testified to the following at his deposition on December 2, 2020. Immediately preceding his August 2, 2018, compensable injury, he was not having any symptoms in his thoracic and lumbar spines or in his lower extremities. After Dr. Crow performed a decompressive laminectomy, petitioner still had numbness in his back and his left leg did not regain its strength. He experienced problems with standing and walking after the December 2019 fall. He "popped [his] spine again" as a result of the May 2020 fall and "had the same symptoms with numbness in [his] legs, loss of feeling in the legs, couldn't stand back up[,] so they sent [him] to CAMC[.]" Following petitioner's transfer to the WVU Medicine Spine Center, Dr. France performed the decompression and thoracic surgery, after which petitioner was still in a wheelchair but was undergoing rehabilitative therapy. Petitioner explained that the goal was to get him back on his feet but, with an operation "so significant," his rehabilitation would take time. On cross examination, petitioner stated that there was a prior incident at work in July 2018 when he was hit in the back by a cage meant to carry mail but that "it wasn't nothing like falling" and he did not receive any treatment after the incident. Regarding petitioner's present condition, he stated, at one point in his rehabilitation, he felt well enough to ride a "trike," which he described as "a handicapped motorcycle" that allows the rider to avoid putting weight on his leg. However, he could no longer ride his "trike," because he cannot stand up "too good."

In a letter dated January 25, 2021, Dr. Crow stated that he was the on-call neurosurgeon when petitioner presented at the emergency room following the August 2, 2018, compensable injury. Dr. Crow explained that petitioner's symptoms were consistent with lower thoracic myelopathy. After petitioner's decompressive laminectomy, Dr. Crow saw petitioner numerous times "regarding his continued neurologic deficits[.]" Petitioner's symptoms worsened after the December 2019 fall. Nevertheless, Dr. Crow concluded that petitioner's symptoms and neurologic deficits were related to the compensable injury.

In its June 25, 2010, order, the Office of Judges affirmed the claims administrator's denials of the authorization requests and its denial of the request to add thoracic myelopathy and thoracic spinal stenosis as compensable diagnoses. In so doing, the Office of Judges found the opinions of Drs. Thaxton and Soulsby were persuasive and also relied on Dr. Stoll's finding that petitioner had reached maximum medical improvement regarding the compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the order on January 20, 2022.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision affirms prior rulings by both the Workers' Compensation Commission and the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is based upon a material misstatement or mischaracterization of the evidentiary record. *See* W. Va. Code § 23-5-15(c) & (d). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

4

"Pursuant to W. Va. Code § 23-4-1g(a) (2003) (Repl. Vol. 2010), a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence." Syl. Pt. 2, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). West Virginia Code § 23-4-3 and West Virginia Code of State Rules § 85-20-9.1 (2006) provide that a claimant must be provided reasonably necessary and medically related treatment for a compensable injury. A condition is compensable if three elements coexist: "(1) a personal injury (2) received in the course of employment [a]nd (3) resulting from that employment." Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970).

After review, we find no error in the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Petitioner argues that the Office of Judges erred in affirming the denials of the authorization requests and the denial of the request to add thoracic myelopathy and thoracic spinal stenosis as compensable diagnoses because Dr. Crow treated him and opined that his symptoms and neurologic deficits were related to the compensable injury. However, Dr. France also operated on petitioner, and Dr. France was far more equivocal as to whether the 2018 compensable injury either caused petitioner to need additional physical therapy or required him to go to CAMC and then the WVU Medicine Spine Center for an additional surgery following the May 2020 fall. Dr. France stated that the compensable injury, the December 2019 fall, the May 2020 fall, and a congenital condition were all severe and that it was difficult to determine which incident or condition caused regression of petitioner's ability to ambulate. Dr. Thaxton found that the requested physical therapy was to treat the progression of petitioner's preexisting conditions and the December 2019 fall constituted an independent intervening injury. Also, Dr. Soulsby opined that the thoracic myelopathy and thoracic spinal stenosis were caused by petitioner's congenital condition, complicated by his degenerative disc disease, and are unrelated to the compensable injury. Dr. Soulsby further explained that petitioner's degenerative disc disease, a result of normal aging, is more advanced than typical, but that is the result of his morbid obesity. The Office of Judges found Drs. Thaxton and Soulsby provided the more persuasive reports, and were further supported by Dr. Stoll's determination that petitioner had reached maximum medical improvement regarding the compensable injury. Therefore, petitioner failed to prove that the authorization requests should have been granted and that thoracic myelopathy and thoracic spinal stenosis should have been added as compensable diagnoses.

Affirmed.

**ISSUED: February 20, 2024**


**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn