**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Robert B. Walker,**
**Claimant Below, Petitioner**

**v.)**     **No. 22-619**     (JCN: 2018016233)
                                        (BOR Appeal No. 2057710)

**Constellium Rolled Products,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert B. Walker appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review") dated June 29, 2022. Respondent Constellium Rolled Products ("Constellium") filed a timely response.[1] The issue on appeal is the amount of permanent partial disability in the claim for Mr. Walker's compensable injury. The claim administrator granted Mr. Walker a 12 % permanent partial disability award on January 31, 2020. On December 2, 2021, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claim administrator's decision. The order was affirmed by the Board of Review on June 29, 2022. Upon our review, we determine that oral argument is unnecessary and that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for vacation in a memorandum decision rather than an opinion. *See* W. Va. R. App. P. 21.

Mr. Walker, a steelworker employed by Constellium, suffered an injury to his head, neck, and right shoulder on January 13, 2018, when he fell in the course of his work. An ambulance/EMT documentation indicates that Mr. Walker struck his head against a wall and lost approximately 50 ccs of blood. He was treated at Jackson General Hospital, where he was diagnosed with head laceration and cervical strain. An x-ray report, electronically signed by Torin Walters, M.D., revealed "remarkable degenerative changes" with minimal subluxation of C4 on C5 possibly related to facet arthropathy. By order dated April 6, 2018, the claim was held compensable for laceration and contusion of the scalp, cervical strain, and torn rotator cuff in the right shoulder.

Ultimately, Mr. Walker was referred for a permanent partial disability evaluation with Prasadarao B. Mukkamala, M.D., who saw him on November 21, 2019. Mr. Walker reported limited use of his right upper extremity, reduced ranges of motion, and pain. It was noted that the

---

[1] The petitioner is represented by counsel Edwin H. Pancake, and the respondent is represented by counsel Tracy B. Eberling.

claim was compensable for a scalp laceration, a scalp contusion, cervical strain, and a right shoulder rotator cuff tear. Dr. Mukkamala noted that Mr. Walker underwent a right shoulder arthroscopy and subacromial decompression surgery. He also underwent rotator cuff repair surgery on December 20, 2018. Mr. Walker continued to have significant limitations in his right shoulder after the second surgery, and an MRI conducted on August 1, 2019, revealed a massive full thickness rupture of the entirety of the supraspinatus and infraspinatus with significant tendon retraction. Dr. Mukkamala wrote that the treating surgeon believed that the right shoulder was beyond surgical repair. Mr. Walker's laceration to the scalp was found to be sutured and healed. Dr. Mukkamala diagnosed him with contusion of the scalp, cervical strain, and right shoulder rotator cuff tear for which he had two operations, but the repair failed. A significant limitation of motion at the right shoulder was observed, along with grinding during movement. Mr. Walker was found to be capable of working in the sedentary work category with restrictions of handling no more than five pounds.

Dr. Mukkamala found Mr. Walker to be at maximum medical improvement, and utilizing the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*"), placed him under Cervical Category II-B from Table 75, for 4% whole person impairment. For cervical spine range of motion restrictions, Dr. Mukkamala found 4% whole person impairment. He then combined the 4% impairment from Table 75 with the 4% whole person impairment for cervical range of motion restrictions for a total of 8% whole person impairment pursuant to the Range of Motion Model. Dr. Mukkamala then placed Mr. Walker into Cervical Category II under Table 85-20-E, which has an impairment range of 5% to 8%. Dr. Mukkamala recommended 8% impairment, and apportioned half (4%) of the claimant's cervical impairment for preexisting degenerative spondyloarthropathy.[2] Finally, Dr. Mukkamala found 8% whole person impairment for right shoulder range of motion restrictions. Combining the 8% whole person impairment of the right shoulder with the 4% whole person impairment for the cervical spine, Dr. Mukkamala opined 12% whole person impairment for the claimant's compensable injury. By order dated January 31, 2020, the claim administrator granted Mr. Walker a 12% permanent partial disability award based upon Dr. Mukkamala's recommendation.

Mr. Walker protested the claim administrator's 12% award, and in support of his protest, he underwent an evaluation with Bruce Guberman, M.D., on March 4, 2021. During examination, Mr. Walker reported constant right shoulder pain, and numbness and tingling at the arms and hands, bilaterally. He denied any prior injuries to the right shoulder or cervical spine. Dr. Guberman found tenderness in the right shoulder and diagnosed Mr. Walker with chronic posttraumatic strain of the rotator cuff, a biceps tendon tear, a chronic posttraumatic strain of the cervical spine, and a history of a scalp laceration. No further treatment was recommended, and Mr. Walker was found to be at maximum medical improvement.

Using the AMA *Guides,* Dr. Guberman placed Mr. Walker in Cervical Category II-B for a finding of 4% whole person impairment. Dr. Guberman then stated that Mr. Walker had 5% whole

---

[2] Although Dr. Mukkamala apportioned 4% whole person impairment for Mr. Walker's preexisting degenerative spondyloarthropathy, his report lacks any reasoning and rationale supporting or explaining his decision to apportion in a 50-50 proportion.

person impairment for cervical range of motion restrictions. He then combined the 4% whole person impairment found in Category II-B with the 5% whole person impairment for cervical range of motion restrictions for a total of 9% whole person impairment pursuant to the Range of Motion Model. Mr. Walker was then placed in Cervical Category II of Table 85-20-E. Dr. Guberman noted that the 9% whole person impairment rating fell outside of the Cervical Category II range of 5% to 8% impairment, and the rating was adjusted to 8% whole person impairment for the cervical spine. Dr. Guberman did not believe apportioning for preexisting impairment to the cervical spine was appropriate, and he stated that "degenerative changes alone on imaging studies of the cervical spine do not correlate with symptoms."[3] For Mr. Walker's right shoulder range of motion restrictions, Dr. Guberman found 8% whole person impairment. He then combined the 8% to the cervical spine with the 8% to the right shoulder, for a total of 15% whole person impairment pursuant to the AMA *Guides.* Because Mr. Walker was previously granted a 12% award, Dr. Guberman recommended an additional 3% award.

In a final decision dated December 2, 2021, the Office of Judges found that the preponderance of the evidence indicated that Mr. Walker had 12% permanent partial disability from his compensable injury. Although the Office of Judges determined that Dr. Mukkamala and Dr. Guberman arrived at the same right shoulder impairment findings, Dr. Mukkamala believed that Mr. Walker has preexisting impairment to the cervical spine. Dr. Guberman found that no apportionment was warranted given the claimant's lack of a prior injury and any restrictions due to his preexisting degenerative changes. However, the Office of Judges found that Dr. Mukkamala's medical evaluation is the best indicator of Mr. Walker's whole person impairment. It was noted that x-rays of the claimant's cervical spine showed remarkable degenerative changes and a minimal subluxation at C4 on C5, and the Office of Judges stated that, "it is more likely than not that the claimant had some range of motion impairment prior to the compensable injury." As a result, the claim administrator's order dated January 31, 2020, was affirmed. In an order dated June 29, 2022, the Board of Review affirmed the decision of the Office of Judges.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision effectively represents a reversal of a prior ruling of either the Workers' Compensation Commission or the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. *See* W. Va. Code § 23-5-15(c) & (d). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. of Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

On appeal, Mr. Walker argues that Dr. Guberman gave a valid explanation as to why he did not believe apportionment was necessary or warranted when he noted that the degenerative

---

[3] Dr. Guberman stated that Mr. Walker would not receive an impairment rating for degenerative changes alone on imaging studies of the cervical spine under the Range of Motion Model or Table 85-20-E. Therefore, he apportioned the entire 8% impairment for Mr. Walker's injury.

changes did not correlate to Mr. Walker's symptoms. Constellium argues that West Virginia Code § 23-4-9b and West Virginia Code of State Rules § 85-20-66.4 both require that an evaluating physician determine the contribution of factors other than the compensable injury when fixing permanent partial impairment resulting from the compensable injury. Constellium further contends that Dr. Mukkamala's opinion is the only medical opinion that satisfies the requirements of both West Virginia Code § 23-4-9b and West Virginia Code of State Rules § 85-20-66.4.

In reaching its conclusion that Mr. Walker has 12% permanent partial disability from his compensable injury, the Office of Judges weighed the reports of Drs. Mukkamala and Guberman, along with the other evidence of record, and concluded that Dr. Mukkamala's assessment was more persuasive. However, there is a question regarding whether Dr. Mukkamala's apportionment determination was speculative or arbitrary. In Dr. Mukkamala's report discussing apportionment for Mr. Walker's cervical range of motion restrictions, he merely stated, "I will apportion impairment and allocate 4% to the preexisting, degenerative spondyloarthropathy and 4% to the compensable injury of 1/13/2018." He did not provide any reasoning or rationale to support his decision to apportion 4% impairment.

The controlling statute for apportionment is West Virginia Code § 23-4-9b (2003), which provides, in part:

> Where an employee has a definitely ascertainable impairment resulting from an occupational or a nonoccupational injury, disease or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one, article three of this chapter, the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury. Compensation shall be awarded only in the amount that would have been allowable had the employee not had the preexisting impairment.

W. Va. Code § 23-4-9b (in part).

This Court has previously held that,

> [t]he purpose of W. Va. Code § 23-4-9b (2003) is to disallow any consideration of any preexisting definitely ascertainable impairment in determining the percentage of permanent partial disability occasioned by a subsequent compensable injury, except in those instances where the second injury results in total permanent disability[.]

Syl. Pt. 2, in part, *SWVA, Inc. v. Birch*, 237 W. Va. 393, 787 S.E.2d 664 (2016).

After review, we find that the Board of Review erred in granting Mr. Walker a 12% permanent partial disability award based upon Dr. Mukkamala's apportionment method. The

record indicates that x-rays taken of Mr. Walker's cervical spine on January 13, 2018, revealed "remarkable degenerative changes." Dr. Mukkamala stated that his 8% whole person impairment recommendation for the claimant's neck is from the preexisting, degenerative condition, as well as the compensable injury. As such, Dr. Mukkamala apportioned 4% impairment to the claimant's preexisting spondyloarthropathy, but he did not provide a basis for a 50-50 apportionment. Dr. Guberman disagreed with Dr. Mukkamala's rating and made no apportionment for cervical impairment because he did not believe that the degenerative changes mentioned correlated with the claimant's symptoms. This Court has found that in order to prove that apportionment is warranted in a workers' compensation case under West Virginia Code § 23-4-9b, the employer must prove that the claimant has a definitely ascertainable impairment resulting from a preexisting condition(s). *See* Syl. Pt. 6, *Duff v. Kanawha Cnty. Comm'n*, No. 23-43, 2024 WL 1715166 (W. Va. April 22, 2024). This requires that an employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s). *Id.* Although Dr. Guberman did not believe that Mr. Walker had preexisting impairment to his cervical spine, the Office of Judges reasoned that it is more likely than not that he had some range of motion impairment prior to the compensable injury based upon the cervical x-ray taken on the date of injury.

Therefore, the decision of the Board of Review is vacated, and this case is remanded for consideration of this Court's holding in *Duff* in order to determine Mr. Walker's whole person impairment for his compensable injury of January 13, 2018.

Vacated and remanded to the Board of Review with instructions.

**ISSUED: August 1, 2024**

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING:**

Chief Justice Tim Armstead

Armstead, Chief Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.